Donna J. (Cline) WEATHERBEE,
Appellant,

v.

INDIANA CIVIL RIGHTS COMMISSION,
and Southwestern Jefferson County
Consolidated Schools Corporation, Appellees.

No. 39A05–9506–CV–214.

Court of Appeals of Indiana.

May 31, 1996.

Rehearing Denied July 30, 1996.

Michael C. Healy, Indianapolis, for appellant.

Pamela Carter, Attorney General of Indiana, Jon Laramore, Deputy Attorney General, Indianapolis, for appellee Indiana Civil Rights Commission.

Michael J. Hensley, Hensley, Walro, Collins & Hensley, Madison, for appellee Southwestern Jefferson County Consolidated Schools Corporation.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Donna J. Cline Weatherbee ("Weatherbee") appeals from the decision of the trial court which vacated the ultimate finding of the Indiana Civil Rights Commission ("ICRC") that the Southwestern Jefferson County Consolidated Schools Corporation ("Southwestern") unlawfully discriminated against her based upon her handicap and sex.

We affirm.

### ISSUES

The issues presented for our review are as follows:

1. Whether the trial court erred when it determined as a matter of law that Southwestern had not discriminated against Weatherbee based upon her handicap.

2. Whether the trial court erred when it concluded that the evidence did not support the ICRC's ultimate finding that Southwestern had discriminated against Weatherbee based upon her sex.

### FACTS

On or about May 24, 1988, Weatherbee tendered a bid to drive a school bus for Southwestern. As part of the bid, the required "Bus Driver Initial Health Certificate" was signed and submitted by her physician, Dr. H. Schirmer Riley. On the preprinted certificate, Dr. Riley stated that Weatherbee met the following qualifications:

A. Sufficient physical ability to drive a school bus.

B. Possession of and full normal use of BOTH hands, arms, feet, eyes and ears.

C. Freedom from any communicable disease, any mental, nervous, organic or functional disease or other conditions that may reasonably be associated with the impairment to properly and safely operate a school bus.

D. Possession of a visual acuity with 150 degrees minimum and with an adequate depth perception as determined by psychophysical testing standards.

Weatherbee also submitted Part A of a "Medical Certification—Public Passenger Chauffeur License" form. Southwestern did not remember having ever before received Part A with an initial bid. On the medical history section, Weatherbee responded "yes" to the following questions:

1. Are you taking any medications of any type?

Explanation: Dilantin—to control seizures

2. Are you under a doctor's care for any medical condition or physical disorder?

Explanation: See # 1

3. Have you been hospitalized for anything?

Explanation: [P]regnancies, rupture, seizure

\* \* \* \* \* \*

5. Do you have any physical impairments or impairment of vision or hearing?

6. Do you have or have you ever had a seizure disorder, epilepsy, "blackout

spells," fainting spells, lapses of consciousness, or severe dizzy spells?

Explanation: See # 1

On the physician's portion of Part A, Dr. Riley stated: "Healthy—Takes Dilantin—no blackouts over 4 yrs."

Although Weatherbee's bid for one of the open school bus routes was the lowest among all bidders, Southwestern rejected her bid. The Superintendent of Southwestern wrote Weatherbee a letter dated June 21, 1988, which stated in part:

[W]hile your medical certification indicates that you are taking dilantin and have had no blackouts for four (4) years, it appears to me that you have a medical condition that may reasonably be associated with the impairment to properly and safely operate a school bus.... for this reason, acting under [advice] from counsel, I am unable to consider your bids....

Thereafter, Southwestern awarded the school bus route to a male.

## PROCEDURAL HISTORY

This action began almost eight years ago when, on July 20, 1988, Weatherbee filed a complaint with the ICRC and alleged that Southwestern had discriminated against her on the basis of her handicap and her sex. Following an administrative hearing, the agency's Administrative Law Judge ("ALJ") concluded that Southwestern's rejection of Weatherbee's bid constituted unlawful handicap and sex discrimination. He assessed damages of $68,931.94. On June 25, 1993, the ICRC entered its extensive Findings of Fact, Conclusions of Law, and Order which affirmed the decision of the ALJ regarding discrimination but which reduced Weatherbee's damages to $34,997.26.

On July 23, 1993, Southwestern petitioned the Jefferson Superior Court for judicial review of the ICRC's finding of discrimination.[1] Weatherbee also filed a petition for judicial review and sought reinstatement of the $68,931.94 award. The trial court consolidated these actions. Following a hearing, the court found that, as a matter of law, no illegal discrimination had occurred on the basis of handicap. The court also concluded that the evidence did not support a finding that Southwestern had discriminated against Weatherbee on the basis of her sex. Weatherbee appeals.[2]

## DISCUSSION AND DECISION

### Standard of Review

This court stands in the same position as that of the trial court when we review a decision of an administrative agency. *SSU Fed'n of Teachers v. Board of Directors, Madison Area Educ. Special Serv. Unit,* 656 N.E.2d 832, 835 (Ind.Ct.App.1995). The reviewing court may grant relief to a party only if it determines that the party has been prejudiced by an agency action that is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege or immunity;

(3) in excess of statutory jurisdiction, authority or limitations, or short of statutory right;

(4) without observance of procedure required by law; or

(5) unsupported by substantial evidence.

IND.CODE § 4–21.5–5–14(d) (1988); *see Indiana Civil Rights Comm'n v. Marion County Sheriff's Dep't,* 644 N.E.2d 913, 915 (Ind.Ct.App.1994), *trans. denied.* The court may not substitute its judgment on factual matters for that of the agency. *SSU Fed'n of Teachers,* 656 N.E.2d at 835. We are bound by the agency's findings of fact if supported by substantial evidence. *Hamilton County Dep't of Pub. Welfare v. Smith,* 567 N.E.2d 165, 167–68 (Ind.Ct.App.1991). However, the law is the province of the judiciary and the reviewing court is not bound by the agency's conclusions of law. *SSU Fed'n of Teachers,* 656 N.E.2d at 835. Furthermore, an agency's findings of ultimate fact,

---

1. Effective July 1, 1994, the Court of Appeals has jurisdiction to review directly the final decisions of the Civil Rights Commission. *See* Ind. Appellate Rule 4(C).

2. We heard oral argument at St. Mary–of–the–Woods College on April 16, 1996.

defined as factual conclusions derived from basic facts, are subject to a reasonableness standard of review. *Ali v. Greater Fort Wayne Chamber of Commerce*, 505 N.E.2d 141, 143 (Ind.Ct.App.1987). Whether the ultimate fact of discrimination was a reasonable inference from the basic facts is a question of law properly subject to the scrutiny of the court. *Id.*

### Issue One: Handicap Discrimination

■ Weatherbee argues that there is substantial evidence to support the ICRC's finding of discrimination based upon handicap and, thus, that the trial court erred when it decided as a matter of law that Southwestern did not discriminate against her based upon her handicap. We must disagree.

The public policy of this state is to provide all citizens equal opportunity for employment and to eliminate segregation or separation based solely on race, religion, color, sex, handicap,[3] national origin or ancestry. IND. CODE § 22-9-1-2(a) (1988). It is also this state's public policy to protect employers from unfounded charges of discrimination. IND.CODE § 22-9-1-2(c) (1988). Every discriminatory practice relating to employment is unlawful unless specifically exempted. IND.CODE § 22-9-1-3(1) (1988). The exclusion of a person from equal opportunities because of sex or handicap constitutes a discriminatory practice. IND.CODE § 22-9-1-3(1)(1) (1988).

"Handicap" is described by statute as:

the physical or mental condition of a person that constitutes a substantial disability. In reference to employment, under this chapter, "handicap or handicapped" also means the physical or mental condition of a person that constitutes a substantial disability *unrelated to the person's ability to engage in a particular occupation.*

**3.** Public Law 23-1993, § 130 substituted the word "disability" for "handicap." 1993 Ind.Acts 2446.

**4.** Weatherbee's seizures were symptoms of epilepsy, characterized as:

IND.CODE § 22-9-1-3(q) (1988) (emphasis added). Thus, the prohibition against discrimination in employment because of handicap does not apply to the failure of an employer to employ a person who because of a handicap is physically or otherwise unable to perform the duties required in a job efficiently and safely, at the standards set by the employer. IND.CODE § 22-9-1-13(a) (1988).

The parties to this action do not dispute that Weatherbee was handicapped or that her bid was rejected because of that handicap. However, Southwestern contends that it acted in good faith when it rejected the bid. In support of their respective positions, both parties cite evidence unknown to Southwestern at the time of its decision. The United States Supreme Court has recognized that an "employer could not have been motivated by knowledge it did not have." *McKennon v. Nashville Banner Pub. Co.*, — U.S. —, —, 115 S.Ct. 879, 885, 130 L.Ed.2d 852, 862 (1995) (after-acquired evidence of employee misconduct does not operate to bar all relief but is relevant to assessment of damage award in age discrimination in employment case). Thus, to decide the issue of unlawful discriminatory conduct, we consider the evidence before Southwestern at the time of its decision.

As an applicant for the school bus driver position, it was incumbent upon Weatherbee to submit to Southwestern a qualified bid which included verification that she was medically fit. Weatherbee presented Southwestern with two documents. In the first document, the health certificate, Weatherbee's physician, Dr. Riley, concluded that Weatherbee possessed sufficient physical ability to operate a school bus. However, in the second document, "Part A," Weatherbee informed Southwestern that she was subject to seizures[4] and was at that time being treated

a paroxysmal disorder of the nervous system which may be associated with, or accompanied by, impairment of the individual's consciousness or awareness and may also be accompanied by convulsive or more complex movements of the body.

with Dilantin.[5] On the physician's part of that form, Dr. Riley indicated that Weatherbee was taking Dilantin and that she had not experienced a "blackout" for over four years. The ICRC determined in its Finding Number 5 that Southwestern considered the presence of Part A to be a "flag" provided by Dr. Riley "to condition and limit the otherwise unconditional approval of her operating a school bus" and that Southwestern "concluded that [Doctor] Riley had given conflicting opinions."

Yet, in its Conclusions of Law the ICRC ruled that "Riley's Certificate, the only medical evidence before [Southwestern], is controlling." The ICRC thus took the position that Southwestern school board members were obliged to ignore the medical information provided in Part A. The ICRC's conclusion is not in accordance with the law. *See* IND.CODE § 4–21.5–5–14(d)(1) (1988). Southwestern's regulations require a school bus driver to maintain the physical characteristics required by the statute *and any other physical characteristics deemed desirable for the safe and proper operation of the school bus and transportation of children.*[6]

■ Pursuant to statute, school boards must award a school bus transportation contract to the "lowest responsible bidder." IND.CODE § 20–9.1–2–9 (1988). For some time, we have recognized that the awarding of contracts to transport school children is not a purely ministerial act but requires the exercise of discretion or judgment in ascertainment of the lowest responsible bidder. *See Lee v. Browning,* 96 Ind.App. 282, 284, 182 N.E. 550, 551 (1932). The law requires school board members to determine "responsibleness" from all of the evidence at their disposal. *See M & M Bus Co. v. Muncie*

*Community Sch. Corp.,* 627 N.E.2d 862, 866 (Ind.Ct.App.1994) ("responsible" is subjective determination and therefore "properly made only by the School"), *trans. denied; Lee,* 96 Ind.App. at 285–86, 182 N.E. at 551.

Here, Southwestern was confronted with ambiguous information concerning Weatherbee's medical status relevant to the job qualifications of a school bus driver in that the information submitted by Weatherbee was subject to more than one reasonable interpretation. Our supreme court has recently reviewed a similar case in which two medical experts had provided conflicting opinions with regard to an employment applicant's medical condition. *Indiana Civil Rights Comm'n v. Southern Ind. Gas and Elec. Co.,* 553 N.E.2d 840 (Ind.1990). In affirming the trial court's reversal of an ICRC determination of handicap discrimination, the court held that the employer was "well within [its] rights in finding [the employee] could not efficiently and safely perform the duties required in the job for which she applied." *Id.* at 842.

From the information provided by Dr. Riley, Southwestern could have reasonably concluded that Weatherbee had experienced a seizure approximately four years[7] prior to the submission of her bid and that she required Dilantin to control her seizures. Based upon that knowledge, Southwestern had a duty to consider not only Weatherbee's rights but also its own responsibility to provide safe transportation for school children and to preserve the confidence of parents and the public in the school's transportation system. In light of Weatherbee's medical status, Southwestern justifiably concluded that Weatherbee's disability was relevant to the job qualifications of a school bus driver

---

*Mantolete v. Bolger,* 767 F.2d 1416, 1419 (9th Cir.1985).

5. Dilantin is an antiepileptic prescription drug used to control seizures. It is recommended that patients taking this drug be advised of the importance of adhering strictly to the prescribed dosage regimen and that patients be cautioned on the use of other drugs or alcoholic beverages without first seeking a physician's advice. PHYSICIANS' DESK REFERENCE 1539–46 (43d ed. 1989).

6. Southwestern's regulations state three primary responsibilities of a school bus driver: to transport pupils safely with proper regard for their health and comfort; to exercise a desirable influence over the pupils; and to maintain proper control over the bus.

7. The record indicates that Weatherbee had actually suffered a seizure in September or October of 1985, but she had not disclosed that incident to Dr. Riley and that information was unknown to Southwestern when it refused Weatherbee's bid.

and that acceptance of her bid created a reasonable probability of substantial harm to school bus passengers and others.

■ The ICRC also maintained in Finding Number 5 that Southwestern did not follow its own regulations and investigate Weatherbee's medical status before it rejected her bid. Specifically, the ICRC cited Regulation § 10.07(A) to support its finding that Southwestern was obligated to seek additional clarification from Riley, to obtain an opinion from another doctor, or to have Weatherbee examined by a physician of its choice. That regulation states:

> The bus driver shall be a minimum of 21 years old at the execution of the contract. If evidence presents itself that there exists physical, emotional, or mental incapacity, the driver may be required to provide objective medical opinions as to his competency.

The cited regulation and the relevant statute[8] both pertain to drivers, not to bidders. Further, neither imposes a duty upon the school to conduct an additional medical investigation and, under the circumstances of this case, we decline to impose that obligation on Southwestern. Even if the school had initiated a more detailed investigation of Weatherbee's particular condition, a reasonable consensus of expert opinion may not have emerged. As the record indicates, medical opinion varies on whether and when an epileptic should drive a school bus.[9]

In its Finding Number 3, the ICRC indicated that Southwestern rejected Weatherbee's bid due to its "determination that it would be unsafe for its school children to ride in a bus driven by Weatherbee because she is an epileptic." In Conclusion Number 11, the ICRC decided that Southwestern's concern "for the safety of the children passengers is genuine and valid." Neither that finding nor that conclusion supports the ICRC's ultimate finding of unlawful discrimination based upon handicap. The trial court properly vacated the ICRC's ultimate finding on that ground.

In arriving at this decision, we do not mean and do not hold that all persons diagnosed with epilepsy are per se incapable of safely operating a school bus. An assessment of whether or not a particular disabled person can safely perform a job involves a case-by-case analysis of the applicant's limitations in relation to the particular job requirements. This individualized determination is essential if we are to protect "handicapped persons from deprivations based upon prejudice, stereotypes, or unfounded fear, while giving appropriate weight to such legitimate concerns ... as avoiding exposing others to significant health and safety risks." *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 287, 107 S.Ct. 1123, 1131, 94 L.Ed.2d 307, 320 (1986).

We hold that Southwestern's decision not to award the contract to Weatherbee was based upon a legitimate nondiscriminatory motive. Weatherbee was not selected because her application failed to establish that her epileptic condition was under control and that, with medication, she was reliably asymptomatic. The medical evidence submitted by Weatherbee supported a reasonable inference that she was not medically fit to operate a school bus. Thus, the evidence does not sustain the ICRC's Conclusion Number 7 that "Weatherbee's condition is a substantial disability unrelated to her ability

---

8. Indiana Code § 20–9.1–3–4 (1988) provides:

> A governmental body may, at any time, require any driver operating a school bus for its school corporation to submit to a physical examination by a licensed Indiana physician selected by the corporation. The school corporation shall pay the cost of an examination under this section.

The ICRC also relies upon *Indiana Dep't of Correction v. Indiana Civil Rights Comm'n*, 486 N.E.2d 612 (Ind.Ct.App.1986), for its conclusion that Southwestern had the burden of proving that Weatherbee could not safely perform the duties of a bus driver. However, that case is inapposite as it addresses the employer's burden of proof when the employer maintains that sex is a bona fide occupational qualification. *See* IND. CODE § 22–9–1–3(p)(2) (1985).

9. A 1988 United States Department of Transportation medical task force recommended that those with epilepsy be permitted to drive trucks in interstate commerce only if they had experienced no seizures and had not taken anticonvulsant drugs for ten years. *Ward v. Skinner*, 943 F.2d 157, 161 (1st Cir.1991), *cert. denied*, 503 U.S. 959, 112 S.Ct. 1558, 118 L.Ed.2d 207 (1992).

to engage in the occupation of bus driver for Schools." The trial court did not err.

### Issue Two: Sex Discrimination

██ Weatherbee also contends that the trial court improperly vacated the ICRC's finding that Southwestern had discriminated against her on the basis of sex. Again, we cannot agree.

The following evidence, which we summarize, was presented at the ICRC hearing:

James Goode, a male school bus driver, testified that, prior to 1977, he had lost consciousness while sitting in the bus driver's seat, possibly due to low blood sugar. Goode was hospitalized and a former Southwestern superintendent visited him in the hospital. Southwestern testified that it had no knowledge of this incident when it rejected Weatherbee's bid. Goode did not renew his contract after 1977 until 1988 when he again submitted a successful bid to drive a bus. However, at that time, Goode did not disclose the relevant incident to Southwestern.

Clarence Marshall, a male school bus driver who was awarded a bus route in 1988, allegedly took Dilantin for seizures. However, Marshall made no reference to the medication or to the seizures on his medical certificate submitted with his bid. Southwestern claimed it was unaware of Marshall's condition.

Walter Schirmer, another male, previously drove for Southwestern despite the fact that he was missing part of an arm. Schirmer ceased driving for Southwestern around 1977.

Based upon this evidence, the ICRC determined in its findings that Southwestern had "unofficial but actual knowledge of the comparable conditions of other drivers" and concluded that Weatherbee's handicap was a seizure disorder "identical to Goode and Marshall." The ICRC then decided that Southwestern had evaluated Weatherbee "under disparate criteria than those applied to males" which constituted a discriminatory practice in employment.

 Disparate treatment occurs when an employer treats some people less favorably than others because of their sex. *See*

*Indiana Civil Rights Comm'n v. City of Muncie,* 459 N.E.2d 411, 418 (Ind.Ct.App. 1984), *trans. denied.* When disparate treatment is alleged, the motive behind such treatment is highly significant and dispositive. *Id.* In claims based upon disparate treatment, Indiana has adopted the allocation of burdens and order of presentation of proof outlined in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See City of Muncie,* 459 N.E.2d at 418. First, the plaintiff must prove a prima facie case of discrimination. If the plaintiff meets that requirement, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory motive for the employee's rejection. Should the defendant carry this burden, the plaintiff must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were but a pretext for discrimination. *Id.* at 418–19. However, the ultimate burden of proof never shifts. *Indiana Dep't of Correction v. Indiana Civil Rights Comm'n,* 486 N.E.2d 612, 617 (Ind.Ct. App.1985). The ultimate burden of showing that the defendant engaged in unlawful discrimination remains at all times with the plaintiff. *See Indiana Civil Rights Comm'n v. Culver Educ. Found.,* 535 N.E.2d 112, 115 (Ind.1989).

We first conclude that there is insubstantial evidence in the record to support the ICRC's finding that Goode's condition, described as "syncope" was "identical" to that of Weatherbee. In addition, the evidence does not sustain the ICRC's finding that Southwestern possessed actual knowledge of the alleged disabilities of male drivers at the time of its decision. In its Finding Number 16, the ICRC pronounced in the alternative that such knowledge should be imputed to Southwestern. The ICRC explained, "This is a small community in which information such as seizures becomes known generally throughout the general populace." The factual finding of what the ICRC termed "rumor notice" is based upon speculation and conjecture. The evidence does not support the ICRC's determination of either actual or imputed knowledge.

Further, to succeed on her claim of sex-based discrimination, Weatherbee was required to show that she was treated differently because of her sex. *See id.* However, the ICRC specifically noted in its Finding Number 3 and Conclusion Number 10 that Southwestern denied the bus route to Weatherbee "solely" because of her handicap. That determination cannot be reconciled with the ICRC's ultimate finding of intentional sex-based discrimination.

Finally, we are not persuaded by the mere fact that Southwestern awarded the route sought by Weatherbee to a male. Weatherbee has failed to produce any evidence that Southwestern awarded this bid to the candidate because he was male. Again, the critical element of motive is missing. In order to find that a redressible discriminatory practice occurred, there must be more than disappointment borne by an employee who happens to fit the characteristics of a protected class. *Indiana Bell Tel. Co. v. Boyd,* 421 N.E.2d 660, 667 (Ind.Ct.App.1981). The record lacks substantial probative evidence to support the ultimate finding that Southwestern discriminated against Weatherbee on the basis of her sex.[10]

### CONCLUSION

Weatherbee has failed to establish that Southwestern engaged in unlawful discriminatory practices. The finding of discrimination based upon handicap could not be reasonably inferred from the basic facts, and the ultimate finding of sex-based discrimination is unsupported by substantial evidence. We affirm the judgment of the trial court.

Affirmed.

BAKER and HOFFMAN, JJ., concur.

---

**10.** Given that Southwestern did not discriminate against Weatherbee, we need not address Weatherbee's contention that the ICRC's reduction of her award from $68,931.94 to $34,997.26 was arbitrary and capricious, an abuse of discretion and unsupported by substantial evidence.