The CITY OF GARY and Mayor Scott King, in his official capacity, and The City of Gary Common Council, consisting of Roy Pratt, Marilyn Krusas, Robert White, Mary Brown, Carolyn Roger, Jerome Prince, Alex Cherry, Charles Hughes, and Kyle Allen, Sr., in their official capacity, Appellants–Defendants,

v.

Ronnie MAJOR d/b/a Affordable Towing And Associates, James Mako, Jr., d/b/a Mako's Towing; and Hewlin Major d/b/a Hugh's Towing, Appellees–Plaintiffs.

No. 45A04–0207–CV–357.

Court of Appeals of Indiana.

Aug. 12, 2003.

Michael J. Rappa, Johnson, Rappa & Ball, LLC, Merrillville, IN, Attorney for Appellants.

Michael C. Dovellos, Merrillville, IN, Attorney for Appellees.

## OPINION

BAKER, Judge.

Appellants-defendants the City of Gary; Mayor Scott King, in his official capacity; and the City of Gary Common Council—consisting of Roy Pratt, Marilyn Krusas, Robert White, Mary Brown, Carolyn Roger, Jerome Prince, Alex Cherry, Charles Hughes, and Kyle Allen, Sr., in their official capacities—(collectively, the City) appeal the trial court's finding of contempt and award of damages in favor of appellees-plaintiffs Ronnie Major d/b/a Affordable Towing and Associates; James Mako, Jr., d/b/a Mako's Towing; and Hewlin Major d/b/a Hugh's Towing (collectively, Towing Companies). Specifically, the City claims that the January 17, 2001 trial court order was "very vague in directing" the City to establish a procedure for the bid-

ding of towing contracts regarding the police-ordered removal of vehicles or automobile parts within the City. Appellant's Br. p. 5. Moreover, the City maintains that the award of $150,000 in damages in unsupported by the evidence. Concluding that the trial court exceeded its authority in issuing the January 17, 2001 order, we reverse.

### FACTS

The facts reveal that in 1989, the Common Council passed a vehicle towing ordinance over then-Mayor Thomas Barnes's veto. The ordinance read, in relevant part:

In order to facilitate the removal of vehicles or parts, the City, *with authorization from the Common Council* may employ personnel and acquire equipment, property and facilities and/or enter into towing contracts as necessary.

Appellant's App. p. 65 (emphasis added). In 2000, the Common Council established a Towing Committee—a subcommittee within the Common Council itself—that awarded contracts for the police-ordered towing of vehicles. Before the creation of the Towing Committee, the Towing Companies had been performing towing services for the City. After the Towing Committee was formed, however, the City terminated the Towing Companies' contracts.

On September 7, 2000, the Towing Companies filed a complaint for declaratory judgment, asking the trial court to rule that the towing ordinance was invalid because it allowed the legislative body of the City of Gary to enter into contracts, a function the Towing Companies alleged was reserved for the executive branch. On January 17, 2001, the trial court entered an order wherein it found that the towing ordinance violated statutory pro-

scriptions against the separation of powers[1] and, thus, was void. Furthermore, the trial court ordered the Mayor of Gary to "establish a fair and equitable procedure for the bidding and awarding of towing contracts to qualified towing entities for the police ordered towing of vehicles." Appellant's App. p. 25.

On July 23, 2001, the Towing Companies filed a motion wherein they requested a finding that the City was in contempt for "willfully and intentionally" refusing to comply with the January 17, 2001 order. Appellant's App. p. 54. Additionally, the Towing Companies requested $150,000 in damages. On November 1, 2001, the Mayor of Gary signed an executive order stating that "oversight of the licensing and the conduct of towing businesses within the City of Gary shall be conducted by the designated Chairman of the Towing Committee." Appellant's App. p. 67.

The trial court held a hearing on the Towing Companies' request for contempt on June 12, 2002. The Towing Companies charged that the Mayor's executive order still left the Towing Committee of the Common Council with the authority to enter into contracts. The City responded that the executive order only allowed oversight of the licensing and conduct of towing companies but did not delegate the contracting authority to the Common Council. On June 27, 2002, the trial court agreed with the Towing Companies' contention, found the City in contempt, and ordered it to pay the Towing Companies $150,000. The City now appeals.

### DISCUSSION AND DECISION

■ On appeal, the City argues that the trial court's January 17, 2001 order was vague and that the amount of damages awarded is not supported by evidence in

---

1. Ind.Code §§ 36–4–4–2, –3, and –4.

the record. The City does not challenge the trial court's determination that the towing ordinance violated the separation of powers. Thus, though we owe a trial court no deference in matters of law, we adopt this determination as the law of this case. *Tincher v. Davidson,* 784 N.E.2d 551, 553 (Ind.Ct.App.2003).

■ While the City argues that the trial court's order was vague and that the damages awarded are not supported by evidence in the record, we focus first on our contempt statute:

> A person who is guilty of any willful disobedience of any process, or any order *lawfully issued:*
>
> (1) by any court of record, or by the proper officer of the court;
>
> (2) under the authority of law, or the direction of the court; and
>
> (3) after the process or order has been served upon the person;
>
> is guilty of an indirect contempt of the court that issued the process or order.

Ind.Code § 34–47–3–1 (emphasis added). The determination of whether a party is in contempt of court is a matter within the sound discretion of the trial court. *Mitchell v. Stevenson,* 677 N.E.2d 551, 558 (Ind. Ct.App.1997). However, we note that before a finding of contempt may be entered, the order the contemnor has flouted must be a "lawfully issued" order. I.C. § 34–47–3–1. An order is lawfully issued if "it is authorized, sanctioned, or at any rate not forbidden, by law." *Black's Law Dictionary* 885 (6th ed.1990). We review questions of law—such as whether an order is authorized by law—de novo. *Tincher v. Davidson,* 784 N.E.2d 551, 553 (Ind. Ct.App.2003).

■ In determining whether the trial court's January 17, 2001 order was "lawfully issued," we first acknowledge that Indiana Code section 34–14–1–8 provides that "further relief based on a declaratory judgment or decree may be granted whenever necessary or proper." Notwithstanding this authority, however, our supreme court has held that "it is the general rule . . . that writs of mandate will not be granted to control the discretionary action of a public officer, board or commission." *Knutson v. State ex rel. Seberger,* 239 Ind. 656, 658, 157 N.E.2d 469, 471 (Ind.1959). Only when a "clear legal duty" exists or an act is ministerial will a court mandate a public officer, board, or commission to act. *Id.* A "legal duty" is "that which the law requires to be done or forborne." *Black's Law Dictionary* 893 (6th ed.1990). An act is "ministerial" if the body carrying out the act does so "without regard to or the exercise of [its] own judgment upon the propriety of the act being done." *Id.* at 996, 157 N.E.2d 469.

We have searched the Indiana Code in vain to find a legal duty on the part of the City to "establish a fair and equitable procedure for the bidding and awarding of towing contracts to qualified towing entities for the police ordered towing of vehicles." Appellant's App. p. 25. It is Indiana Code section 9–21–1–3 that provides the authority for the City to enforce parking regulations. However, the statute does not contain any provision as to the procedures that are required. We cannot say that the City had any legal duty to "establish a fair and equitable procedure for the bidding and awarding of towing contracts." Appellant's App. p. 25.

We also note that the award of a contract is not necessarily a ministerial act. For instance, in *Weatherbee v. Indiana Civil Rights Commission,* we held that a statute requiring that a busing contract be awarded to the "lowest responsible bidder" required an exercise of discretion, as the "responsibleness" of the bidder had to be ascertained. 665 N.E.2d 945, 949 (Ind.Ct.

App.1996). Thus, we held that the selection of a busing contractor was not a ministerial act. *Id.* As previously stated, our statutes do not detail exactly what procedures the City must undertake to enforce parking regulations. If the determination of which busing company is "responsible" qualifies as an exercise of discretion, then the development of an entire scheme of parking enforcement certainly does as well.

Moreover, the General Assembly has left the creation of such enforcement schemes to the City through the Home Rule Act. Specifically, Indiana Code section 36–1–3–3 states that "any doubt as to the existence of a power of a unit shall be resolved in favor of its existence." When coupled with Indiana Code section 9–21–1–3—which provides the authority for the City to enforce parking regulations—it is clear that the development of parking enforcement policies has been left to the City.

■ Having determined that no legal duty exists to "establish a fair and equitable procedure for the bidding and awarding of towing contracts" and that the selection of methods for enforcing parking regulations is within the discretion of the City, we must conclude that the "general rule" applies: "Writs of mandate will not be granted to control the discretionary action of a public officer, board or commission." *Knutson,* 239 Ind. at 658, 157

N.E.2d at 471. Thus, the trial court's January 17, 2001 order was not a "lawfully issued" order.[2] Because the order was not a "lawfully issued" order, the trial court erred in finding the City in contempt and ordering the payment of damages. Accordingly, we reverse the trial court's finding of contempt and award of damages.

Reversed.

DARDEN, J., concurs.

SULLIVAN, J., concurs in part and dissents in part.

SULLIVAN, Judge, concurring in part and dissenting in part.

I concur in the decision to reverse the trial court's finding of contempt and its award of damages against the City. However, I am unable to agree with the basis upon which the majority reaches its conclusion.

The majority bases its holding upon the determination that the January 17, 2001 order of the trial court was not lawfully issued in that the majority could find no statutory requirement for establishment of bidding procedures. The majority therefore concludes that the City has no duty to establish such procedures for the award of towing contracts. I respectfully dissent as to this foundation for the reversal of the trial court.[3]

---

**2.** We note a disturbing irony in the trial court's January 17, 2001 order. The trial court found that the towing ordinance was unlawful because it reposed the power to enter into contracts—an executive power—in the Common Council, the City's legislative body. Appellant's App. p. 24–25. Notwithstanding its finding, the trial court then ordered the City to conduct bidding for towing contracts. In essence, the trial court was deciding that the best policy for the City of Gary was for towing services to be secured through a bidding process. While this may

be the case, in our tripartite form of government, such policy decisions are entrusted to the executive and legislative branches.

**3.** In doing so, I recognize that, as the majority acknowledges in footnote 2, invalidity of the Council's towing ordinance has been determined as a violation of the separation of powers provisions of I.C. §§ 34–4–4–2, –3, and –4. On the other hand, we have as the issue before us the validity or propriety of the November 1, 2001 Executive Order which was an attempt to comply with the bidding re-

The City has not challenged the lawfulness of the order requiring it to establish fair and equitable bidding procedures. To be sure, such a challenge would be to intimate, as does the decision of the majority here, that the City is free to award such contracts without any bids whatsoever. This in turn would contemplate awards of such contracts to relatives or close political friends and contributors without regard to qualifications or other appropriate considerations. I cannot fathom that the law supports such a result.

Be that as it may, I agree that in following its bidding procedures, the City does so in the exercise of its discretion. It is for this reason that I agree that the trial court's finding of contempt and award of damages was erroneous and must be reversed.

quirements of the Council's towing ordinance. This anomaly creates a curious posture in which the case is brought before us. It is possible that the anomaly mentioned underlies the effect of the majority's holding which treats the entire towing ordinance as null and void. Thus, there are no bidding procedures in place with regard to awards of towing

contracts. Yet, the majority appears to validate, as within Executive discretion, the Order which gives oversight of licensing to the Towing Committee which was created by the invalid ordinance. If I correctly interpret our decision today, a different anomaly is produced.