The CITY OF GARY and Mayor Scott King, in his official capacity, and The City of Gary Common Council, consisting of Roy Pratt, Marilyn Krusas, Robert White, Mary Brown, Carolyn Roger, Jerome Prince, Alex Cherry, Charles Hughes, and Kyle Allen, Sr., in their official capacity, Appellants (Defendants below),

v.

Ronnie MAJOR d/b/a Affordable Towing and Associates, James Mako, Jr., d/b/a Mako's Towing, and Hewlin Major d/b/a Hugh's Towing, Appellees (Plaintifffs below).

No. 45S04–0401–CV–10.

Supreme Court of Indiana.

Feb. 10, 2005.

Michael J. Rappa, Johnson & Rappa, LLC, Merrillville, IN, Attorney for Appellants.

Michael C. Dovellos, Merrillville, IN, Attorney for Appellees.

RUCKER, Justice.

The City of Gary, the Mayor of Gary, and members of the Gary City Council appeal a trial court finding of contempt and a corresponding award of monetary damages. We affirm the contempt finding but reverse the award of damages.

### Facts and Procedural History

Over the veto of then Mayor Thomas V. Barnes, the legislative body of the City of Gary, the Gary City Council ("City Council"), passed an ordinance in 1989 concerning the award of contracts for towing illegally parked vehicles. The ordinance provided in pertinent part: "In order to facilitate the removal of vehicles or parts, the City, with authorization from the Common Council may employ personnel and acquire equipment, property and facilities and/or enter into towing contracts as necessary. . . ." Appellants' App. at 33. Apparently a compromise was reached between the legislative and executive branches of government and the ordinance lay dormant for a number of years. Then, in 2000, the City Council established a "Towing Committee", a subcommittee of the City Council, that assumed the responsibility of awarding towing contracts. Before the Committee was established, Ronnie Major doing business as Affordable Towing & Associates, James Mako, Jr. doing business as Mako's Towing, and Hewlin Major doing business as Hugh's Towing ("Towing Companies") had been performing towing services under contracts negotiated with the executive branch of the City of Gary. After the Committee was established the City Council cancelled existing contracts with various private tow truck operators, including those of the Towing Companies, and awarded the towing contracts to other businesses.

On September 7, 2000, the Towing Companies filed a complaint for declaratory and injunctive relief against the City of Gary, Scott King—the Mayor of Gary—and members of the Gary City Council (referred to collectively as "City"). Alleging damages in the amount of $100,000 for each plaintiff, the complaint sought a declaration that the towing ordinance violated an alleged statutory separation of powers.[1]

---

1. As authority for this proposition, the Towing Companies relied on three statutes, which read in pertinent part:

More specifically, according to the complaint, entering contracts on behalf of a municipality is a function of the executive rather than the legislative branch of city government. After conducting a hearing, the trial court agreed with the Towing Companies and entered an order on January 17, 2001 declaring null and void all towing contracts entered by the City Council. The trial court's order also declared:

> [T]he Executive Branch of Government of the City of Gary is hereby ordered to establish a fair and equitable procedure for the bidding and awarding of towing contracts to qualified towing entities for the police ordered towing of vehicles in the City of Gary with in [sic] which the [Towing Companies] shall participate.

Appellants' App. at 25. As for the Towing Companies' request for damages, the trial court's order provided, "[t]his cause shall be set for hearing on the issue of whether or not the Plaintiff's [sic] are entitled to damages because of the illegal and unlawful actions of the City of Gary Council Towing Committee...." Id. at 24–25. Apparently no such hearing was ever conducted and the City did not appeal the trial court's order.

Several months later, contending that the City had refused to comply with the order, the Towing Companies filed a motion to find the City in contempt of court and also asked the trial court to impose damages for contempt in the amount of $150,000. While the contempt action was pending, the Mayor of Gary issued an executive order that provided in pertinent part:

> Effective November 1, 2001 the City of Gary's administrative policy regarding the oversight of the licensing and conduct of towing businesses in the City of Gary shall be as follows:
>
> 1. Oversight of the licensing and the conduct of towing businesses within the City of Gary shall be conducted by the designated Chairman of the Towing Committee as established by ordinance of the Gary Common Council.
>
> 2. Said Chairman shall report in writing to the Office of the Mayor on a quarterly basis commencing January 1, 2002 as to the status of such licensing and conduct of said businesses.

Id. at 67. After a hearing on June 12, 2002, the trial court found the City in contempt and ordered the City to pay the Towing Companies $150,000 in damages.

The City appealed arguing in part: (i) the trial court should not have found it in contempt because the order of January 17, 2001 was unclear and thus the City was not in willful disobedience of the order, and (ii) the trial court erred in awarding damages because no evidence was introduced to support the award. Finding the

---

The powers of a city are divided between the executive and legislative branches of its government.
Ind.Code § 36–4–4–2(a).

(a) All powers and duties of a city that are executive or administrative in nature shall be exercised or performed by the city executive, another city officer, or a city department.

(b) An ordinance of the city legislative body requiring an executive or administrative function to be performed may:

(1) Designate the department that is to perform that function....
I.C. § 36–4–4–3.

The legislative power of a city is vested in its legislative body. All powers and duties of a city that are legislative in nature shall be exercised or performed by its legislative body.
I.C. § 36–4–4–4(a).

January 17, 2001 order unlawful, the Court of Appeals reversed the judgment of the trial court. *See City of Gary v. Major,* 792 N.E.2d 962 (Ind.Ct.App.2003). Having previously granted the Towing Companies' petition to transfer, we now affirm in part and reverse in part the trial court's judgment.

## Discussion

### I.

Indiana Code § 34–47–3–1 provides in relevant part: "A person who is guilty of any willful disobedience of any process, or any order *lawfully issued:* (1) by any court of record ... is guilty of an indirect contempt of the court that issued the process or order" (emphasis added). Consistent with this statutory provision, our courts have long held that "[i]ndirect contempt is the willful disobedience of any *lawfully entered* court order of which the offender has notice." *Andrews v. State,* 505 N.E.2d 815, 830 (Ind.Ct.App.1987) (emphasis added) (citing I.C. § 34-4-7-3, the predecessor to I.C. § 34–47–3–1). *See also Mitchell v. Mitchell,* 785 N.E.2d 1194, 1198 (Ind.Ct.App.2003); *Packer v. State,* 777 N.E.2d 733, 738 (Ind.Ct.App.2002); *MacIntosh v. MacIntosh,* 749 N.E.2d 626, 629 (Ind.Ct.App.2001), *trans. denied; Meyer v. Wolvos,* 707 N.E.2d 1029, 1031 (Ind.Ct.App.1999), *trans. denied; Hanson v. Spolnik,* 685 N.E.2d 71, 82 (Ind.Ct.App. 1997), *trans. denied.* In this case, according to the Court of Appeals, the trial court's order was not "lawfully entered" and consequently not enforceable by means of contempt. This was so because the City had no duty to "establish a fair and equitable procedure for the bidding and awarding of towing contracts." *Major,* 792 N.E.2d at 966. Our understanding of a "lawfully entered" order in the context of a contempt finding is slightly different from that of our colleagues.

In general, contempt of court involves disobedience of a court which undermines the court's authority, justice, and dignity. *Hopping v. State,* 637 N.E.2d 1294, 1297 (Ind.1994). But the authority of a court to sanction a party for contempt is not a matter of legislative grace. Rather, among the inherent powers of a court is that of maintaining its dignity, securing obedience to its process and rules, rebuking interference with the conduct of business, and punishing unseemly behavior. *State v. Shumaker,* 200 Ind. 623, 157 N.E. 769, 775 (1927). Viewed in this light, the statutory definition of indirect contempt is merely a legislative recognition of our courts' inherent power to cite and punish for contempt. *See In re Contempt of Crenshaw,* 708 N.E.2d 859, 861 (Ind.1999); *Skolnick v. State,* 180 Ind.App. 253, 388 N.E.2d 1156, 1162 (1979).

The law in Indiana is well settled that a person cannot be held in contempt of court for failure to obey an order if the issuing court had no jurisdiction to give the order. *State ex. rel. Leffingwell v. Super. Ct. No. 2 of Grant County,* 262 Ind. 574, 576, 321 N.E.2d 568, 569 (1974). Such an order is void and unenforceable. *See, e.g., State ex rel. Taylor v. Circuit Ct. of Marion County,* 240 Ind. 94, 162 N.E.2d 90, 92 (1959) (order declaring striking workers in contempt of court void and unenforceable because a specific statutory provision declared trial courts lack jurisdiction to issue a restraining order involving a labor dispute). However, an order that is void because the court lacks jurisdiction to enter it is distinguished from an order that is otherwise invalid. Thus, "[a]lthough a defendant cannot be held in contempt of a void order, a defendant may be held in contempt of an erroneous order.... Accordingly, a defendant may not challenge a contempt finding based upon the prior order's non-jurisdictional irregu-

larities. A party must follow an erroneous order. The only remedy from an erroneous order is appeal and disobedience thereto is contempt." *Carson v. Ross,* 509 N.E.2d 239, 243 (Ind.Ct.App.1987) (citations omitted), *trans. denied; accord Crowl v. Berryhill,* 678 N.E.2d 828, 830 (Ind.Ct.App.1997) ("A party's remedy for an erroneous order is appeal and disobedience of the order is contempt.").

▆▆▆ Jurisdiction is comprised of three elements: (1) jurisdiction of the subject matter; (2) jurisdiction of the person; and (3) jurisdiction of the particular case. *Troxel v. Troxel,* 737 N.E.2d 745, 749 (Ind. 2000). In our view an order is not "lawfully entered" in the context of a contempt finding only where the court lacks one of these three elements. Neither before the Court of Appeals nor before this Court has the City alleged the trial court lacked jurisdiction to enter its order of January 2001.[2] At most, the order was erroneous. However, "[t]he only remedy from an erroneous order is appeal...." *Carson,* 509 N.E.2d at 243. We emphasize that the City did not appeal the trial court's original order of January 17 and so we are not presented with any question about the merits of the order or whether it was correct. The only issue is whether there was sufficient evidence before the trial court to demonstrate that the City was in willful disobedience of the trial court's order.

**II.**

The City contends the trial court abused its discretion in entering its order of contempt. The City's argument in this regard is not entirely consistent. On the one hand the City argues that the order was vague and unclear, and thus the City did not know what was expected of it. On the other hand the City argues the Mayor's executive order did exactly what the court ordered (thus undermining the assertion that the City was unaware of what it was ordered to do).

▆▆▆ In order to be held in contempt for failure to follow the court's order, a party must have willfully disobeyed the court order. *Ind. High School Athletic Ass'n v. Martin,* 765 N.E.2d 1238, 1241 (Ind.2002). The order must have been so clear and certain that there could be no question as to what the party must do, or not do, and so there could be no question regarding whether the order is violated. *Id.* A party may not be held in contempt for failing to comply with an ambiguous or indefinite order. Otherwise, a party could be held in contempt for obeying an ambiguous order in good faith. *Bowyer v. Ind.*

2. Responding to the Towing Companies' complaint for declaratory and injunctive relief, the City filed a motion to dismiss under Indiana Trial Rule 12(B)(6), which the trial court denied. In its supporting memorandum the City argued, among other things, that pursuant to Indiana Code section 36–4–4–5 this cause should be heard by the Lake Superior Court sitting en banc. The Statute provides in pertinent part:

(a) If uncertainty exists or a dispute arises concerning the executive or legislative nature of a power or duty exercised or proposed to be exercised by a branch, officer, department, or agency of the government of a municipality, a petition may be filed in the circuit court of the county in which the municipality is located by ... any person who alleges and establishes to the satisfaction of the court that he is or would be adversely affected by the exercise of the power; however, in a county having a superior court that has three (3) or more judges, the petition shall be filed in the superior court and shall be heard and determined by the court sitting en banc.

Although the City did not say so in express terms, its argument could be viewed as a challenge to the trial court's jurisdiction. However, after receiving an adverse ruling on its motion to dismiss, the City did not advance this argument any further. We express no view on the merits of the City's now apparently abandoned claim.

*Dep't of Natural Resources*, 798 N.E.2d 912, 918 (Ind.Ct.App.2003). The determination of whether a party is in contempt of court is a matter left to the discretion of the trial court. *Hancz v. City of South Bend*, 691 N.E.2d 1322, 1324 (Ind.Ct.App. 1998). We will reverse a trial court's finding of contempt only if there is no evidence or inference therefrom to support the finding. *Id.*

In this case the trial court's order required the executive branch of government of the City of Gary "to establish a fair and equitable procedure for the bidding and awarding of towing contracts to qualified towing entities for the police ordered towing of vehicles in the City of Gary with in [sic] which the [Towing Companies] shall participate." Appellants' App. at 25. Contrary to the City's contention, the order appears to us to be decidedly unambiguous. The language is direct, declarative, and includes no conflicting terms or provisions. In fact at the contempt hearing the City made no assertion that the order was unclear or that it did not know what the order required it to do. Rather, the City argued that the Mayor's executive order represented compliance with the trial court's order. *See* Tr. at 5–8. The City made this same claim before the Court of Appeals. *See* Br. of Appellants at 7–8.

Although apparently motivated by the trial court's order of January 17, 2001, the Mayor's executive order fell far short of compliance with the trial court's order. Indeed a review of the hearing transcript and the City's brief reveals that the heart of the City's argument was not so much that the executive order complied with the trial court's directive, but rather the City addressed the underlying justification for the trial court's order, namely: that the authority to award contracts was an executive function rather than a legislative one. Apparently conceding that this was an executive function,[3] the City argued, for example:

> The Executive Order established a valid and legal process for the awarding of towing contracts within the City of Gary, in which the the [sic] power to enter into towing contracts remained with the Executive Branch of the City of Gary, and did not violate the Indiana Statutes with regard to the separation of powers. The Executive Order made clear that the authority to enter into towing contracts rests with the Mayor—this authority has not been delegated to the Common Council or the Towing Committee.

*Id.* at 5. The City also argued, "[T]he executive order makes clear that the authority to make a contract is still with the mayor. There's nothing in this Executive Order No. 4 that says that he's going to delegate the contracting authority to the council." Tr. at 5–6.

These arguments miss the mark. It is not enough to say that the Mayor of Gary has retained and not delegated an executive branch function. Rather, the question is whether the executive branch of the government of the City of Gary "estab-

---

**3.** We do not resolve in this opinion whether, as a matter of law, awarding municipal contracts is an executive versus a legislative function. We do observe however that the long established rule in this jurisdiction is that municipal officers have no power to enter contracts except where that authority is expressly granted by statute; and municipal officers must pursue and exercise such authority in strict compliance with the mode prescribed by statute. Contracts made by officers without following the prescribed mode are void and unenforceable. *Bd. of Commissioners of Henry County v. Gillies*, 138 Ind. 667, 38 N.E. 40, 42 (1894); *State ex rel. Keith v. Common Council of Michigan City*, 138 Ind. 455, 37 N.E. 1041, 1044 (1894); *Platter v. Bd. of Commissioners of Elkhart County*, 103 Ind. 360, 2 N.E. 544, 554 (1885).

lish[ed] a fair and equitable procedure for the bidding and awarding of towing contracts" as ordered by the trial court. Clearly it did not, and the City makes no credible claim to the contrary.

The only evidence the City presented to demonstrate compliance with the trial court's order of January 17, 2001 was the Mayor's executive order. This was not sufficient. The trial court therefore did not abuse its discretion in finding the City in contempt of court.[4] We have a different view however on the question of damages.

### III.

Once a party has been found in contempt of court, monetary damages may be awarded to compensate the other party for injuries incurred as a result of the contempt. *Cowart v. White*, 711 N.E.2d 523, 532 (Ind.1999). In determining an amount of damages the trial court may take into account "the inconvenience and frustration suffered by the aggrieved party...." *Id.* at 532 (quoting *Thomas v. Woollen*, 255 Ind. 612, 266 N.E.2d 20, 22 (1971)). The determination of damages in a contempt proceeding is within the trial court's discretion, and we will reverse an award of damages only if there is no evidence to support the award. *Meade v. Levett*, 671 N.E.2d 1172, 1181 (Ind.Ct.App. 1996).

The trial court awarded the Towing Companies $150,000 in damages for the City's contemptuous conduct. The City complains the trial court abused its discretion in doing so because there was no evidence submitted to support the award.

The record shows that in their motion for contempt, the Towing Companies sought damages in the amount of $150,000. No supporting documents were included with the motion to justify damages in any amount. And at the contempt hearing, no evidence was introduced or argument made to support an award of damages. Rather, the written order finding the City in contempt declared, "[t]here being no argument presented by the Defendants to contradict the damages requested, the Court now orders damages in the amount of $150,000.00." Appellants' App. at 10.

We disagree with the trial court on this point. The City's silence on the question of damages is of no moment. Absent some evidence in the record demonstrating that the Towing Companies suffered injury as a result of the City's contemptuous conduct, there was simply no basis to enter an award of damages. On this issue the judgment of the trial court is reversed.[5]

### Conclusion

The judgment of the trial court is affirmed in part and reversed in part. This cause is remanded for further proceedings not inconsistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.

---

4. We observe that the trial court actually found the "Defendants" to be in contempt. Appellants' App. at 10. However, as a purely technical matter, no named defendant was ordered by the trial court to do anything. And that is especially so with regard to the City Council and its members. Rather, it was the "Executive Branch" of government which the trial court ordered to establish a fair and equitable procedure for bidding and awarding towing contracts. *Id.* at 25. Mayor Scott King, as head of the executive branch of government in the City of Gary, is thus the only defendant to whom the trial court's contempt finding applied.

5. We express no opinion on whether the Towing Companies are entitled to damages on their original complaint. That issue is not before us.