## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 12 2016, 9:35 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE

Essam Otefi
Angola, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Essam Otefi, | January 12, 2016 |
| *Appellant-Respondent,* | Court of Appeals Cause No. 76A03-1506-DR-662 |
| v. | Appeal from the Steuben Circuit Court |
| Doaa Ebrahim, | The Honorable Allen N. Wheat, Judge |
| *Appellee-Petitioner.* | The Honorable Randy Coffey, Magistrate |
| | Trial Court Cause No. 76C01-1209-DR-320 |

**Barnes, Judge.**

# Case Summary

Essam Otefi appeals the trial court's denial of his contempt petition against his ex-wife, Doaa Ebrahim, as well as the award of attorney fees to Ebrahim and modification of his child support obligation. We affirm in part and reverse in part.

# Issues

The issues before us are:

    I.    whether the trial court properly refused to hold Ebrahim in contempt for recovering personal property in Egypt not specifically mentioned in the dissolution decree;

    II.    whether the trial court properly increased Otefi's child support obligation based on Ebrahim's alleged increased childcare costs; and

    III.    whether the trial court properly ordered Otefi to pay attorney fees to Ebrahim.

# Facts

Otefi and Ebrahim are immigrants who married in Egypt in 2006, then settled in Steuben County, and became American citizens. However, they retained property in Egypt and had relatives living there. The couple had two children while they were married.

Ebrahim petitioned for divorce in 2012. At the final hearing, the parties presented an agreement for division of their personal property and debts. The

agreement listed thirty-one specific items of property and divided them between the parties; it also set aside Otefi's pension solely to him.  The parties owned no real estate in the United States.  However, at the outset of the hearing, counsel for Otefi stated:

> The other issue, Your Honor, is that there is a question and perhaps some dispute as to real estate ownership in Alexandria, Egypt of the respective parties.  Nonetheless it is my understanding that the parties have agreed to relinquish any and all interest that either party has against the real estate of the other in the nation of Egypt if it exists.

App. p. 96.  Counsel for Ebrahim agreed that this was an accurate stipulation.  Counsel for Otefi then continued:

> And finally, Your Honor, uh, we just discussed this walking down the hallway, um, [Ebrahim] would agree that post-dissolution, she would bring no further claim in the nation of Egypt for financial benefit or associated with the property of the parties in the nation of Egypt.  Having been otherwise satisfied by this Court's decree.

*Id.*  Counsel for Ebrahim again agreed with this statement.

[5]  The trial court entered a final dissolution decree, reflecting the stipulation and agreement of the parties regarding division of their personal property and debts in America and Otefi's pension.  The decree further stated:

> 9.      Mother and Father stipulated and agreed that neither will assert any claim against real estate which the other may own and which is located in Alexandria, Egypt in any court anywhere.  Further, neither Mother nor Father shall bring any legal action in

Egypt the purpose of which being to avoid and have nullified any provision of this Court's Final Decree of Divorce.

10.   The Court adopts each and every stipulation set forth above by Mother and Father, and same shall become the Order of this Court.

*Id.* at 79-80.  The trial court further stated:

12.   All stipulations set forth on the record by the parties and identified by the Court above in this Court's Findings of Fact are hereby adopted and made the order of this Court.

*Id.* at 84.  The dissolution decree also imposed a child support obligation of $360 per week upon Otefi, which subsequently was modified to $461 per week.

[6]   Ebrahim filed a motion for relief from judgment.  Among other matters, Ebrahim contended she had limited command of English and was essentially pressured into accepting the stipulations regarding the parties' property at the outset of the final hearing.  The trial court denied Ebrahim's motion.  She then appealed, and this court affirmed the trial court's ruling.  *Ebrahim v. Otefi*, No. 76A03-1309-DR-368 (Ind. Ct. App. June 30, 2014).  We analyzed the record of the final hearing, along with evidence of Ebrahim's English proficiency, and held that although it would have been preferable if the trial court had directly asked Ebrahim and not her attorney about the stipulations stated by Otefi's counsel, "we conclude that [Ebrahim] waived her challenge to the division of marital assets and liabilities."  *Id.*, slip op. at p. 9.

[7] While the appeal was pending, Ebrahim filed an action with authorities in Egypt to obtain personal property located in an apartment leased or owned by Otefi.[1] In this action, Ebrahim represented that she and Otefi were still married and that Otefi was squandering marital property. Apparently, Egyptian law does not recognize the validity of the parties' divorce in America, and Ebrahim's filing permitted the seizure of the items in the apartment. These items, which were not listed in the parties' stipulated property settlement or in the dissolution decree, were worth about $6,000. An Egyptian court also imposed a sentence of four months in jail upon Otefi in absentia in relation to Ebrahim's action, which Otefi became aware of when he went to Egypt to visit his parents and he had to hire a lawyer there to defend himself.

[8] On January 21, 2015, Otefi filed a motion to modify child support, asserting that Ebrahim had obtained employment and her childcare costs had decreased. On January 28, 2015, Otefi filed a verified petition for a rule to show cause why Ebrahim should not be held in contempt for filing the action in Egypt to obtain the property in the apartment; Otefi alleged that this action violated the dissolution decree's division of property and the parties' property settlement agreement.

[9] After conducting a hearing, the trial court refused to hold Ebrahim in contempt because the dissolution decree did not address the personal property she

---

[1] There was conflicting evidence as to whether Otefi owned or leased the apartment.

obtained in Egypt. Also, the trial court did modify Otefi's child support obligation but increased, not decreased, it based upon Ebrahim's child support worksheet. The trial court also ordered Otefi to pay $750 to Ebrahim's attorney. Otefi filed a motion to correct error, which the trial court denied. Otefi now appeals.

## Analysis

At the outset, we acknowledge that Ebrahim has not filed an appellee's brief. In such a situation, we need not develop arguments for her and may reverse if Otefi is able to establish prima facie error. *See Vandenburgh v. Vandenburgh*, 916 N.E.2d 723, 725 (Ind. Ct. App. 2009). Prima facie error "is error at first sight, on first appearance, or on the face of it." *Id.* However, we are not relieved of our obligation to correctly apply the law to the facts in the record before determining whether reversal is required. *Id.*

### I. Contempt

Otefi first contends the trial court erred in refusing to hold Ebrahim in contempt. A party who willfully disobeys a court's order may be held in contempt of court. *Witt v. Jay Petroleum, Inc.*, 964 N.E.2d 198, 202 (Ind. 2012). It is within the trial court's discretion to determine whether a party is in contempt, and we will review its judgment for an abuse of discretion. *Id.* The order alleged to have been violated "must have been so clear and certain that there could be no question as to what the party must do, or not do, and so there could be no question regarding whether the order is violated." *City of Gary v.*

*Major*, 822 N.E.2d 165, 170 (Ind. 2005). Failure to comply with an ambiguous or indefinite order cannot support a contempt finding. *Id.*

[12] Otefi argues Ebrahim violated the clear terms of the dissolution decree in seeking to obtain personal property in Egypt. We conclude, however, that the dissolution decree was ambiguous with respect to disposition of any personal property in Egypt. First, the dissolution decree only prohibits Ebrahim from asserting "any claim against *real estate* which the other may own and which is located in Alexandria, Egypt . . . ." App. p. 79 (emphasis added). It does not contain any prohibition related to making claims against personal property in Egypt. And, the personal property obtained by Ebrahim in Egypt was not divided or even mentioned in the dissolution decree or the parties' settlement agreement. As such, Ebrahim's action does not appear to have been filed to "avoid and have nullified" any part of the dissolution decree. *Id.* In other words, the dissolution decree did not clearly prohibit Ebrahim's actions in Egypt, and the trial court properly refused to hold her in contempt for allegedly violating that order.

[13] Otefi focuses upon the second purported stipulation at the final hearing, made by Ebrahim's counsel's agreement with the statement by Otefi's counsel, "[Ebrahim] would agree that post-dissolution, she would bring no further claim in the nation of Egypt for financial benefit or associated with the property of the parties in the nation of Egypt." *Id.* at 96. However, this language, which arguably would have prohibited attempts by Ebrahim to obtain personal property in Egypt, was not included in the final dissolution decree. The decree

stated that it included "each and every stipulation *set forth above*," as well as "[a]ll stipulations set forth on the record by the parties *and identified by the Court above . . . .*" *Id.* at 79-80, 84 (emphases added). When parties to a dissolution enter in a property settlement agreement, the agreement must be submitted to the court for approval and incorporation into the dissolution decree if so approved, and only at such time does the agreement become enforceable. *Spencer v. Spencer*, 752 N.E.2d 661, 663 (Ind. Ct. App. 2001) (citing Ind. Code § 31-15-2-17). Here, the trial court did not incorporate any provisions regarding personal property in Egypt into the final dissolution decree. Nor did we make any such holding in Ebrahim's appeal from the denial of her motion for relief from judgment. Thus, the purported second stipulation at the final hearing regarding such property was not enforceable, by a contempt action or otherwise.

## II. Child Support

[14]    Next, Otefi contends the trial court erred in increasing his weekly child support obligation to $498 per week. This amount coincides with the child support worksheet submitted by Ebrahim at the hearing. We will reverse a trial court's child support modification only if it is clearly erroneous. *Bogner v. Bogner*, 29 N.E.3d 733, 738 (Ind. 2015). In reviewing a support modification, we will consider only the evidence and the reasonable inferences therefrom favorable to the judgment. *Id.*

[15]    First, Otefi argues that the trial court erred in accepting Ebrahim's representation that her child care costs have increased from approximately $60

per week to $150 per week. Per Child Support Guideline 3(E), "[c]hild care costs incurred due to employment or job search of both parent(s) should be added to the basic obligation. It includes the separate cost of a sitter, day care, or like care of a child or children while the parent works or actively seeks employment." At the hearing, Ebrahim introduced into evidence a receipt from a daycare provider that she paid $110 per week for the younger child, and a separate receipt for afterschool care for the older child showing a cost of $40 per week, for a total of $150 per week.

[16] In his motion to correct error and on appeal, Otefi contends that the amount of $150 per week is clearly unreasonable and inconsistent with what Ebrahim claimed to have paid in child care expenses in 2014 according to her 2014 income tax return. For us to accept Otefi's argument, however, would require us to reweigh evidence. Ebrahim submitted documentation that her current weekly child care expenses total $150. The trial court was permitted to rely upon such documentation in setting Otefi's child support obligation.

[17] Otefi's second argument regarding child support is that the trial court should have reduced the amount claimed by Ebrahim in weekly child care costs to account for the fact that she may be eligible to claim a child care tax credit on her federal income tax return. The possibility of such an adjustment is mentioned in the Official Commentary to Child Support Guideline 3(E). In reviewing the record, we discern that Otefi made no such argument regarding the tax credit in his initial filing with the trial court or during the hearing on the matter. The sole disputed points at the hearing were the amount of child care

expenses Ebrahim incurred and whether Otefi was entitled to a credit for overnight visits with his children. Otefi first raised the matter of the tax credit in his motion to correct error. However, a party cannot raise a previously-available issue for the first time in a motion to correct error. *Yater v. Hancock Cty. Bd. of Health*, 677 N.E.2d 526, 530 (Ind. Ct. App. 1997). Failure to raise errors that existed at trial may not be remedied in a post-trial motion to correct error or on appeal. *Babinchak v. Town of Chesterton*, 598 N.E.2d 1099, 1103 (Ind. Ct. App. 1992). Thus, we decline to address whether the tax credit issue is a basis for reversing the child support modification.

### III. Attorney Fees

[18] The final issue Otefi raises is whether the trial court erred in ordering him to pay $750 to Ebrahim's attorney. In its order, the trial court stated it was ordering Otefi to pay this amount as reimbursement for "defending this action." App. p. 16. This would appear to refer to defending the contempt petition, as the trial court did not give any indication that it was ordering the payment of attorney fees in relation to the child support modification pursuant to Indiana Code Section 31-16-11-1. *Cf. Whited v. Whited*, 859 N.E.2d 657, 665 (Ind. 2007). Given Ebrahim's failure to file a brief and provide us with any argument as to why this statute should apply, we will not apply it.[2]

---

[2] We additionally note that the trial court did not order Otefi to pay any of Ebrahim's attorney fees in the original dissolution decree. It is difficult to discern, especially without any argument from Ebrahim, why the dissolution attorney fees statute did not support any award of fees in the original decree but does so now.

[19] "Indiana adheres to the 'American Rule' with respect to the payment of attorneys' fees, which requires each party to pay his or her own attorneys' fees absent an agreement between the parties, statutory authority, or rule to the contrary." *Fackler v. Powell*, 891 N.E.2d 1091, 1098 (Ind. Ct. App. 2008), *trans. denied*. As noted, it does not appear that the trial court was relying upon the statutory authority related to dissolution actions in ordering Otefi to pay attorney fees, and there was no agreement between the parties for him to do so. That leaves Indiana Code Section 34-52-1-1(b), which allows an award of attorney fees to a prevailing party when the other litigant has pursued a claim or defense that is frivolous, unreasonable, or groundless. *Id.*

[20] On this point, we conclude Otefi has established prima facie error, in that we do not perceive his contempt petition to have been frivolous, unreasonable, or groundless. Although Otefi has not prevailed on his contempt claim, we acknowledge that there was an apparent inconsistency between the stipulations entered into at the final dissolution hearing and the language contained in the dissolution decree itself. Although Ebrahim did not technically violate the dissolution decree and thus cannot be held in contempt, we believe there was a reasonable basis for Otefi to believe that Ebrahim violated the spirit of the decree by pursuing an action in Egypt that resulted in her obtaining an additional $6,000 worth of personal property and in a four-month jail term for Otefi that he was forced to defend against. There were reasonable grounds for Otefi to seek to hold Ebrahim in contempt, and as such we reverse the trial court's order that he pay a portion of Ebrahim's attorney fees.

# Conclusion

Because Ebrahim did not violate the plain language of the dissolution decree, the trial court properly refused to hold her in contempt. There also is no basis to reverse the trial court's increase of Otefi's child support obligation. However, Otefi has established prima facie error in the award of attorney fees against him. We affirm the denial of the contempt petition and the modification of Otefi's support obligation but reverse the attorney fees award.

Affirmed in part and reversed in part.

Kirsch, J., and Najam, J., concur.