**Timothy P. HEAGY, Appellant–Respondent,**

v.

**Kelly K. KEAN, Appellee–Petitioner.**

**No. 48A02–0603–JV–234.**

Court of Appeals of Indiana.

April 17, 2007.

Bruce Douglas Brattain, Mario Garcia, Brattain & Minnix, Indianapolis, IN, Attorney for Appellant.

Irma Hampton (Nave) Stewart, Anderson, IN, Attorney for Appellee.

## OPINION

MAY, Judge.

Timothy D. Heagy appeals the latest judgment in the continuing litigation following determination of his paternity of a girl, E.R.H., born to Kelly K. Kean. The court did not abuse its discretion when it declined to find Kean in contempt of court, to modify custody, or to modify Heagy's support obligation. Therefore, we affirm.

## FACTS AND PROCEDURAL HISTORY

On February 21, 1999, Kean gave birth to E.R.H. On December 27, 1999, the court established Heagy's paternity and ordered him to pay support. Until the court had additional time to hear evidence regarding custody, E.R.H. remained in Kean's custody and Heagy was given parenting time.

In October of 2000, Heagy filed an emergency request for custody and for Kean's visitation to be supervised because she was exposing E.R.H. to second-hand smoke. In November 2000, the court denied Heagy's emergency request to modify custody, but ordered Kean to refrain from smoking in E.R.H.'s presence. After additional hearings, the court found Kean had followed the order to protect E.R.H. from second-hand smoke and it named her primary custodian in December 2001.

On September 19, 2003, when Heagy picked-up E.R.H. for visitation, he took her to a medical office to have her urine collected and tested for cotinine, a biomarker that indicates exposure to nicotine. E.R.H.'s cotinine level was "quite high, in the eightieth percentile, for a girl her age." (Tr. at 151.) Heagy hired a private detective, who videotaped Kean and others smoking in close proximity to E.R.H. at a bowling alley on February 22, 2004.

Based on this evidence, on July 15, 2004, Heagy filed a petition to modify custody, in which he alleged Kean's exposure of E.R.H. to second-hand smoke, in light of E.R.H.'s age and medical conditions, was a substantial change in circumstance justifying modification of custody. In a September 2004 deposition, Kean admitted violating the court's order regarding smoking around E.R.H. In February 2005, Heagy filed a motion for contempt based on Kean's admission she violated the court order. After three hearings, the court denied Heagy's petitions for custody change and for contempt citation.

## DISCUSSION AND DECISION

### 1. *Contempt of Court*

█ Heagy claims the court abused its discretion by declining to find Kean in contempt of court. Ind.Code § 34–47–3–1 provides:

A person who is guilty of any willful disobedience of any process, or any order lawfully issued:

(1) by any court of record, or by the proper officer of the court;

(2) under the authority of law, or the direction of the court; and

(3) after the process or order has been served upon the person; is guilty of an indirect contempt of the court that issued the process or order.

In other words, "indirect contempt is the willful disobedience of any lawfully entered court order of which the offender has notice." *City of Gary v. Major*, 822 N.E.2d 165, 169 (Ind.2005) (emphasis removed). However, that statutory definition is "merely a legislative recognition of our courts' inherent power to cite and punish for contempt." *Id.* Courts have inherent power to maintain their dignity, secure obedience with process and rules, rebuke interference with the conduct of business, and punish unseemly behavior. *Id.* Disobedience that undermines the court's authority, justice, and dignity is an act in contempt of court. *Id.*

To be held in contempt for failing to follow a court order, a party must willfully disobey the court's order. *Id.* at 170. The determination whether a party willfully disobeyed an order is left to the sound discretion of the trial court. *Id.* at 171. Where the court declined to find a party in contempt, we may reverse "only where there is no rational basis for the trial court's action." *Clark v. Clark*, 404 N.E.2d 23, 37 (Ind.Ct.App.1980). Unless the judgment is against the logic and effect of the facts and circumstances, and the reasonable inferences therefrom, the court acted within its discretion. *Id.* We will not reweigh the evidence or assess the credibility of the witnesses, and we view the evidence in the light most favorable to the judgment. *Id.*

On November 8, 2000, the court entered an order that provided in relevant part:

2. Petitioner ordered not to smoke in her vehicle when the child is in vehicle.

3. Petitioner ordered not to smoke in direct presence of child.

4. Petitioner ordered not to smoke in the home with the child. Petitioner directed to go outside to smoke.

(Appellant's App. at 32.) Then, on December 12, 2001, the court entered another order that provided:

3. Petitioner and Respondent shall expend all reasonable and appropriate effort to maintain a smoke-free environment in their respective homes and in automobiles used for the transport of the child, and neither shall be permitted to smoke in the presence of the child nor shall they permit others to do so;

4. That Petitioner shall be permitted to smoke on her back porch so long as she maintains in good repair and operation the exhaust and the purification systems installed in such area;

5. That the child shall not be permitted to go onto the said porch, except as an exit to the back yard, nor shall the door to the said porch at anytime be left open into the living area so long as either the Petitioner or her mother continue to smoke or so long as they permit others to do so on the said back porch[.]

(*Id.* at 39–40.)

In her deposition, Kean admitted smoking in the presence of E.R.H. in violation of the court order:

Q Can you give me an estimate of how many times, for instance, this year you have smoked in the presence of the child?

A No, I can't.

Q If I were to suggest more than ten times, would you disagree?

A   No, I wouldn't.

Q   So it happens once in a while; is that a fair—

A   Once in a—yes

Q   —statement? Is it typically on the back porch where it occurs?

A   Yes.

Q   Does your mother ever smoke in the presence of the child?

A   Periodically she had.

Q   Have you smoked in your car this year with your daughter in the car—

A   No.

Q   —at the same time?  Has your mother done that?

A   No.

Q   So am I correct, that most of these incidents occurred on the back porch?

A   Yes.

Q   There may be isolated other locations, but for the most part that's where it would occur.

A   Yes.

Q   Would it be a scenario pretty much like you've described, watching TV or something like that?

A   Yes.

Q   When this incident occurred—for instance, I think you said a couple of days prior to the first of July this year—how many cigarettes did you smoke while your daughter was around?

A   To the best of my knowledge, I'm thinking one or two.

Q   Did you realize when you were doing that, that that was contrary to the instructions of the court order that had been entered previously in this case?

A   At the time I was not thinking that.

Q   Well, thinking about it now, do you think that was contrary to the judge's instructions?

A   Yes.

Q   And I'm not trying to put words in your mouth.  Am I correct, at the time, you weren't thinking about it at all?

A   Right.

Q   Is that a fair characterization?

A   Yes.

Q   But sitting here now, do you agree that that is contrary to the judge's prior instructions?

A   Yes, I do.

Q   Has the activity you're talking about, the smoking, has it occurred consistently since the judge's prior order was entered in the manner you've described?

A   No.

Q   When did that conduct begin?

A   It began, I'm going to say—I'm trying to think back—probably around spring of 2003.

Q   Do you know why you began doing that?

A   There was a time where we had some remodeling going on in our home and I was involved with it and my mother was involved with it.  It was a joint venture, so to speak.  It was just one of those moments where you're thinking, well, I'm just going to go inside for just a second, no harm done.  And, of course, [E.R.H.] was not around then, and it just developed.

(*Id.* at 166–68.)  Kean's mother, Evelyn, also testified that she and Kean had smoked around E.R.H. in violation of the court order.

Kean violated the court order to refrain from smoking around E.R.H.  However,

when Kean was asked whether she realized at the time she was smoking that she was violating the court's order, she responded: "At the time I was not thinking that." (*Id.* at 167.) That evidence could support the court's apparent finding that, while Kean violated the order, she did not do so as an act of "willful disobedience." Ind.Code § 34–47–3–1.

Nor may we reverse the trial court's judgment for errors that do not "affect the substantial rights of the parties." Ind. Appellate Rule 66(A). In its final judgment, the court ordered:

> 10. Although Petitioner has not acted with contempt, since the Court's last order she failed without excuse or justification to protect [E.R.H.] from second-hand smoke as directed and it is appropriate that some portion of Respondent's attorney fees expended in an effort to enforce this Court's Orders should be assigned to Petitioner. Accordingly, Petitioner [is] Ordered to pay Respondent's attorney the sum of Twelve Hundred Dollars ($1,200) within sixty (60) days of todays [sic] date to be applied to his fees to be applied to his fees [sic] in this cause. Further, Petitioner's Request for Attorney fees is denied.

(Appellant's App. at 27.) As Kean was ordered to pay a portion of his attorney fees, Heagy has not explained how he was prejudiced by the court's failure to find Kean in contempt. Therefore, we find no abuse of discretion.

### 2. *Modification of Custody*

■ We prefer to grant latitude and deference to trial courts in family matters. *In re Paternity of B.D.D.*, 779 N.E.2d 9, 13 (Ind.Ct.App.2002). Therefore, custody modifications are left to the sound discretion of the trial court, and we may reverse only for an abuse of that discretion. *Id.*

Where, as here, the court entered findings of fact and conclusions of law, we apply a two-tiered standard of review. *Id.* We first determine whether the evidence supports the trial court's findings of fact and then determine whether the findings support the conclusions and judgment. *Id.* We may reverse the judgment only if there is no evidence to support the findings or no findings to support the judgment. *Id.* When conducting our review, we neither reweigh the evidence nor reassess the credibility of the witnesses, *id.* at 14, and we view the evidence and any reasonable inferences therefrom in the light most favorable to the judgment. *Rea v. Shroyer*, 797 N.E.2d 1178, 1181 (Ind.Ct. App.2003).

Modification of child custody may occur only when a parent can demonstrate "modification is in the best interests of the child, and there is a substantial change in one or more of the factors the court may consider." Ind.Code § 31–14–13–6. Because Heagy filed the motion to modify, he had the burden to demonstrate a change in circumstances. *See Paternity of B.D.D.*, 779 N.E.2d at 14. The factors the court may consider are listed in Ind.Code § 31–14–13–2, which in pertinent part provides:

■ The court shall consider all relevant factors, including the following:

(1) The age and sex of the child.

(2) The wishes of the child's parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

> (A) the child's parents;
>
> (B) the child's siblings; and
>
> (C) any other person who may significantly affect the child's best interest.

(5) The child's adjustment to home, school, and community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 2.5(b) of this chapter.

The court should evaluate the impact of a change in any of those circumstances on the particular child at issue, because a change that would be inconsequential to one child might be devastating to another child. *Joe v. Lebow*, 670 N.E.2d 9, 25 (Ind.Ct.App.1996). We must give the trial court latitude to determine whether a change is, or is not, substantial. *Id.* at 24.

Heagy claims "the evidence conclusively established that a modification of custody was in the best interests of E.R.H. because of the catastrophic effects exposure to [second-hand smoke] was having on her." (Appellant's Br. at 14.) The evidence Heagy relies on to reach this conclusion is the "overwhelming scientific evidence," (*id.*), regarding the impact of second-hand smoke on health.

To explain why we cannot find the court abused its discretion in denying Heagy's motion, we quote a number of the findings and conclusions from the court's order denying modification:

Findings of Fact

\* \* \* \* \* \*

15. The deposition testimony of Dr. Phillip Goshert, M.D., was admitted by the parties' agreement without reservations regarding deposition objections. Dr. Goshert has been a medical doctor specializing in pediatric care for 22½ years and has been the child's pediatrician since April 23, 2000.

16. On May 27, 2004, Dr. Goshert gave the child her kindergarten physical, which he detailed in his deposition at pages 54 through 56, incorporated herein by reference; And see Deposition Exhibit B, as modified-Petitioner's Exhibit 1 at pages 2(a, b, and c)).

17. Dr. Goshert testified that based upon his complete examination during his kindergarten physical of [E.R.H.], he found that she was "a very healthy child", [sic] that she was in pretty good shape, and that nothing was wrong with her. (Deposition pp. 54 and 56, L. 18)

18. During the trial both parties characterized [E.R.H.] as a very healthy and happy child.

\* \* \* \* \* \*

20. After Respondent filed and served on Petitioner the pending Verified Petition to Modify Custody, Petitioner "received a wake-up call" and realized that her "decision" to resume smoking had placed her at substantial risk of losing custody of her daughter.

21. She immediately determined that her home would be entirely smoke-free and that neither she nor her mother nor any other person would be permitted to smoke in her home or in the presence of her child and that she would abide by and exceed the directives of the court's Order with regard to second hand smoke.

22. Petitioner and her Mother have complied with their determination to provide a smoke-free environment for the child, and there is no evidence before the Court that Petitioner and her mother have violated any order of the court since she received Respondent's Verified Petition to Modify.

23. Linda Wihebrink has been Petitioner and Evelyn Kean's housekeeper and has consistently cleaned the Kean's

[sic] home on a biweekly basis for approximately ten years.

\* \* \* \* \* \*

26. Linda Wihebrink is a non-smoker and is particularly sensitive to the presence of cigarette smoke to such an extent that she does not visit at her mother's home, because her mother smokes and she finds the odor of cigarettes so offensive.

27. Linda Wihebrink testified that she has not detected in Petitioner's home any signs of cigarettes, cigarette smoke, ashtrays, or film suggesting smoking in Petitioner's home since over 14 months prior to her testimony.

\* \* \* \* \* \*

29. The opinion of Respondent's experts regarding the child in this case, [sic] do not take into consideration the child's full medical history, including her present condition, and further, the opinions regarding the child's likely medical future contravene the evidence of the child's healthy condition since September 2003, which was the last date on which the experts examined the child's medical history.

30. The opinions of these experts rely upon studies regarding second hand smoke and their individual assessment of [E.R.H.]'s medical condition as they have summarized it against a theoretical child, such that their opinion [sic] should be accorded reduced weight on the question of a change of custody, but are relevant to the court's consideration with regard to orders on restrictions to the child's exposure to second[-]hand smoke.

31. Except for the testimony on second-hand smoke, there was no evidence at trial to suggest that [E.R.H.] was not happy, well-adjusted, well-cared for and thriving in her mother's home.

\* \* \* \* \* \*

### Conclusions of Law

\* \* \* \* \* \*

6. While some sanction may be appropriate for prior violations of the Court's Order, the Court concludes that the Petitioner has now taken appropriate steps to protect [E.R.H.] from the harmful effects of second [-] hand smoke.

7. The Court concludes that [E.R.H.] is happy, well-adjusted, well-cared for and thriving in her mother's home.

8. It is in the best interest of the child that she remain in the sole custody of the Petitioner–Mother, such that Respondent's Petition to Modify with Respect to Custody is hereby denied. . . .

(Appellant's App. at 21–26.)

Despite the volumes of scientific evidence from Heagy's three experts regarding the long-term consequences of second-hand smoke, the fact remains that E.R.H.'s family practice physician[1] testified his examination of E.R.H. on May 27, 2004, revealed "she was a well child." (Appellee's App. at 69.) He also agreed she is "a very healthy child." (*Id.*) We may not reassess the credibility of the witnesses or reweigh the evidence.[2] *Pa-*

---

1. Heagy claims the court erroneously described "Dr. Goshert as a pediatrician specializing in pediatric care," (Appellant's Br. at 39), when Dr. Goshert is a family practice doctor. We decline to find reversible error in that distinction. Regardless of his specialization, no one disputes Dr. Goshert has years of experience and has been E.R.H.'s physician since 2000.

2. Heagy asserts the court erred by finding E.R.H. healthy because it is "clearly contrary to the evidence presented in the form of cotinine test result" and other evidence presented

*ternity of B.D.D.*, 779 N.E.2d at 14. The evidence most favorable to the judgment supports the trial court's finding no change in the factors the court is required to consider. We may not second-guess the court's determination. *See Joe*, 670 N.E.2d at 25 ("it is the province of the trial court to determine how the evidence is to be viewed, and where the evidence at least arguably supports the trial court's findings, we are constrained to uphold them").

Nevertheless, Heagy requests we take a "strong position" on this issue:

> The time has come for the Court to publicly recognize that [second-hand smoke] has severe adverse health consequences on children in Indiana. In keeping with Indiana's well-established principle of determining what is in the best interests of its children, the Court should take a strong position and declare that [second-hand smoke] is a clear and present danger to the health and welfare of Indiana's children. The Court should also state explicitly that exposure to [second-hand smoke] is a factor sufficient to warrant a change in custody.

(Appellant's Br. at 35.)

We leave the decision whether to modify the factors in Ind.Code § 31–14–13–2 to the Indiana Legislature.[3] The factors already provided by the legislature for determining whether a modification of child custody should occur would have permitted

the court to modify custody of E.R.H. if there had been a significant change in E.R.H.'s health. *See, e.g., Joe*, 670 N.E.2d at 24 (obese child's forty-pound weight gain in one year sufficient to support substantial change in factor regarding child's health). The evidence herein simply did not require the court to find there was a substantial change in E.R.H.'s health.

As for whether modification would have been in E.R.H.'s best interest, Heagy testified E.R.H. is a loving, lively, happy, caring, bright, emotionally healthy child who likes to laugh, has a healthy outlook on life, and receives satisfactory grades. (Tr. at 110, 113.) His testimony supports the trial court's conclusions E.R.H. is "happy, well-adjusted, well-cared for and thriving in her mother's home," (Appellant's App. at 26), and E.R.H.'s best interests would be served by maintaining the existing custody arrangement.

### 3. Modification of Child Support

■■■ Heagy asserts the court erred when it failed to explain in its findings or judgment why it did not modify his child support obligation. Under the circumstances herein, we cannot agree.

Heagy submitted a child support worksheet and documents substantiating his and Kean's incomes. The worksheet indicates the most Heagy should be paying in support is $105.54 per week, which is a significant decrease from the $179.14 per

by Heagy. We decline Heagy's request that we reweigh the evidence.

Neither do we find any error in the court's giving less weight to the opinion of experts who had not reviewed E.R.H.'s medical history in the most recent eighteen months. Assigning credibility and the weight to be given to evidence is within the province of the trial court. Therefore, we also cannot find error in the court giving credibility to Kean's claim that she would follow the court's order from this point forward.

3. Therefore, we also decline Heagy's request we find clearly erroneous the court's conclusion that exposure to second-hand smoke "does not constitute a sufficient basis for a change of custody as a matter of law." (Appellant's Br. at 37.) Neither will we declare "any intentional exposure of a child to [secondhand smoke] at any level, especially one with an established history of respiratory ailments, is unacceptable under existing law." (*Id.* at 37–38.)

week the previous order requires him to pay. However, his worksheet also provided an overnight credit to Kean. Therefore, it demonstrated the amount of support Kean should pay if the court modified custody of E.R.H., not if Kean remained her custodian.

Moreover, when Heagy began presenting testimony regarding his income and employment status, Kean objected because, as neither party had filed a separate petition to modify support, the information was of questionable relevance unless the court decided to modify custody. (*See* Tr. at 97.) Thereafter, counsel and the court had a four-page discussion of what issues were before the court. The court noted it would need financial information if there was a request for attorney fee shifting or if there was a change of custody, but "[n]ot for any modification if he doesn't prevail." (*Id.* at 99.) Heagy's counsel responded, "we didn't seek a modification ... [f]or change ... [o]f support.... But if there is a significant change in the way things are being done, that could become relevant and I think the Court can make the call ... [w]hether it needs that financial ... [i]nformation ... [o]r not." (*Id.*) The court again said, "I think absent a petition, even the Court would be obliged to put a party on notice that an issue is gonna be decided and nobody is on notice of that, I think." (*Id.* at 100.) Heagy's counsel replied, "I agree, Your Honor." (*Id.*) Heagy led the court to believe he was seeking a modification of child support *only* if the court modified custody.

[13] Therefore, if any error occurred, Heagy invited it. "The doctrine of invited error is grounded in estoppel and precludes a party from taking advantage of an error that he or she commits, invites, or which is the natural consequence of his or her own neglect or misconduct." *Balicki v. Balicki*, 837 N.E.2d 532, 541 (Ind.Ct.

App.2005), *trans. denied* 855 N.E.2d 997 (Ind.2006). Because Heagy led the court to believe he was seeking a modification of support only if he obtained custody, he cannot now be heard to claim the court erred by failing to modify his support payment when Kean remained custodian. *See id.* (declining a husband's invitation to find error when the court considered two assets as marital property, as the husband had listed those two assets as marital property subject to division on his proposed property division).

**CONCLUSION**

The evidence most favorable to the judgment supported the court's decision to maintain custody in Kean and to find Kean was not in contempt of court. Because Heagy told the court he wished support to be modified only if the court modified custody, we cannot find error in the court's failure to modify support. For these reasons, we affirm.

Affirmed.

MATHIAS, J., and NAJAM, J., concur.