Oscar B. DUMONT, Appellant–Respondent,

v.

Michelle D. DUMONT, Appellee–Petitioner.

No. 17A05–1104–CR–195.

Court of Appeals of Indiana.

Nov. 22, 2011.

Ordered Published Jan. 12, 2012.

W. Erik Weber, Mefford Weber & Blythe, Auburn, IN, Attorney for Appellant.

Robert J. Hardy, Hardy Law Office, Auburn, IN, Attorney for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Petitioner, Oscar Dumont (Father), appeals from the trial court's Order denying his Verified Petition for Rule to Show Cause, Enforcement of Marital Settlement Agreement and Modification of Marital Settlement Agreement in

favor of Appellee–Respondent, Michelle Dumont (Mother).

We affirm.

### ISSUES

Father raises three issues for our review, which we restate and consolidate as the following two issues:

(1) Whether the trial court abused its discretion by not finding Mother in contempt for her alleged violations of the Marital Settlement Agreement; and

(2) Whether the trial court abused its discretion by not granting Father additional parenting time.

### FACTS AND PROCEDURAL HISTORY

Father and Mother were married on May 20, 2006, with one child, K.D., born of the marriage. On October 15, 2008, Father filed for dissolution of the marriage. On April 2, 2010, Father and Mother entered into a Mediated Marital Settlement Agreement (Marital Settlement Agreement). On April 8, 2010, the trial court approved the Marital Settlement Agreement and incorporated it into its dissolution decree issued the same day.

Under Section B, Paragraph 5 of the Marital Settlement Agreement, Mother was given physical custody of K.D., with both parents possessing joint legal custody. Father was granted certain visitation rights to K.D. consisting of two overnight midweek stays as well as alternate weekends. By the parties' agreement, K.D. stayed with Father on Tuesdays and Thursdays of each week. Further, the Marital Settlement Agreement provided that each parent would be entitled to two weeks' vacation during which parenting time would be uninterrupted. Paragraph 5 also addressed each party's responsibility to obtain additional daycare "in the event that the parent needs additional daycare for that parent's own reasons." (Appellant's App. p. 48). Section B, Paragraph 5(d), contained the parties' acknowledgement that "the right of first refusal under the Indiana Parenting Time Guidelines shall apply." (Appellant's App. p. 48). Section B, Paragraph 7(c) obligated the parties to notify each other in the event that a "serious illness" or "any other accident" befell K.D. (Appellant's App. p. 49).

Mother worked at a factory, with her shift beginning at 6 a.m. and ending at 2:30 p.m. Her normal practice was to drop K.D. off at a daycare on her way to work prior to 6 a.m. On those days when K.D. was with Father, Father dropped K.D. off at the same daycare at 6:15 a.m. on his way to work. The daycare provider testified that K.D. arrived in pajamas and slept until his normal waking time of 7:30 a.m. no matter which party dropped K.D. off at daycare.

Work on Saturdays and overtime work was required for Mother's job. She received limited prior notice of overtime, sometimes only the day before. The week of April 5, 2010, Mother worked overtime, which resulted in her reporting to work shortly before 4 a.m. On those occasions, Mother would wake the then two year old K.D. around 3 a.m., and drop him off at daycare around 3:45 a.m. There, K.D. would fall back asleep until his normal waking time of 7:30 a.m. In August 2010, Mother informed Father that she intended to take a two week vacation beginning August 2, 2010, during which time her parenting time was uninterrupted under the Marital Settlement Agreement. Rather than going out of town, Mother instead reported to work during the week and on Saturday, working 11 days of overtime. During this period, K.D., now three years old, was taken to daycare either by Mother

at around 3:45 a.m., or around 6 a.m. by Mother's boyfriend, Jeff Greenfield (Jeff), who began residing with Mother in May 2010. On August 31, 2010, Mother and Jeff were married.

Also, around May 18, 2010, K.D. was scratched by Jeff's cat. Mother notified Father, but maintained that the scratch was minor. Father demanded vaccination records for the cat. On May 18, 2010, Mother notified Father that Jeff had requested the vaccination records. On May 27, 2010, Mother notified Father that Jeff refused to provide the vaccination records to Father and that Father would need to seek court assistance to obtain them.

On August 6, 2010, Father filed a Verified Petition for Rule to Show Cause, Enforcement of Marital Settlement Agreement and Modification of Marital Settlement Agreement, alleging that Mother was in contempt for denying Father parenting time with K.D. and requesting the trial court to provide Father with additional parenting time. Father further requested that Mother be held in contempt for refusing to provide the cat's vaccination records. On September 30, 2010, Jeff provided the vaccination records to Father. On November 23, 2010 and January 25, 2010, the trial court held hearings on Father's petition along with other matters and received evidence from Father, Mother, Jeff, and the daycare provider. On January 25, 2010, the trial court requested the parties to submit their proposed orders for consideration. On March 16, 2011, the trial court issued its Order denying Father's petition, which provided in relevant part:

1. That on April 8, 2010, [the Marital Settlement Agreement] was filed with the [c]ourt which [a]greement provided, among other matters, that [Mother] was granted the primary physical custody of the parties['] minor child, [K.D.] [ . . . ],

with both parties being awarded the joint legal custody of said minor child.

2. That a [p]arenting [t]ime [o]rder was entered as provided for in said [a]greement.

3. That on August 6, 2010, [Father] filed his [petition].

4. That with regard to [Father's petition] filed August 6, 2010, the [c]ourt makes the following findings and [o]rders:

a) The [c]ourt does not interpret the Marital Settlement Agreement entered into by and between the parties to require that on the occasional mornings that [Mother] goes to work early that [K.D.] should be dropped off at [Father's] home on [Mother's] way to work nor does the [c]ourt interpret the agreement to require that [Mother] take [K.D.] to Father's home the night before any morning [Mother] has to go to work early;

b) That the [c]ourt does not interpret the Indiana Supreme Court Parenting Time Guidelines to require that on the occasions that [Mother] goes to work early that she is required to drop [K.D.] off at [Father's] home on the way to work or that [Mother] take [K.D.] to [Father's] home the night before;

c) That the [c]ourt denies [Father's] request to order that on the occasional days [Mother] goes to work early that [Mother] drop [K.D.] off at [Father's] home on the way to work or that Mother take [K.D.] to Father's home the night before;

d) That while the [c]ourt does not condone [Mother] swearing at [Father] the [c]ourt does not find that such speech constitutes a contemptuous act;

e) That with regard to Section B, paragraph 5(c) of the Marital Settle-

ment Agreement, referencing a two (2) week block of uninterrupted time for vacation, the [c]ourt interprets said provision to contemplate a situation where [Father] and [Mother] shall have the right to travel out of town for up to two (2) consecutive weeks and because the traveling parent is out of town the parenting time otherwise enjoyed by the non-traveling parent will be interrupted. Accordingly, if the parties do not travel out of town on an extended vacation, then, the other party shall not be denied parent time otherwise provided for in the Marital Settlement Agreement. [Mother] is admonished that working through her vacation period is not cause for the denial of [Father's] parenting time otherwise provided for by the [a]greement. [ . . . ] (f) That [Mother's] failure to provide [vaccination] records requested by [Father] in association with the scratch sustained [K.D.] is not a violation of the Marital Settlement Agreement or otherwise a contemptuous act.

5. That except as otherwise herein stated [Father's petition] filed August 6, 2010 is overruled, denied and dismissed.

\* \* \*

(Appellant's App. pp. 12–16).

Father now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

#### I. Contempt

■ Father contends that the trial court abused its discretion by declining to hold Mother in contempt for her alleged violations of the Marital Settlement Agreement. To find a party in contempt, two elements are required: a valid court order and a person's willful disobedience of that court order.; See Ind. Code § 34–47–3–1; *Heagy v. Kean,* 864 N.E.2d 383, 386 (Ind. Ct.App.2007), *trans. denied.* The trial court possesses sound discretion to determine whether a party willfully disobeyed an order. *Id.* Unless the judgment is against the logic and effect of the facts and circumstances, and the reasonable inferences therefrom, the court acted within its discretion. *Id.* Where the trial court declines to find a party in contempt, we may reverse only where the trial court's action lacks a rational basis. *Id.* Further, we will not reweigh the evidence or assess witness credibility, and the evidence is viewed in the light most favorable to the judgment. *Id.*

Here, the Martial Settlement Agreement was incorporated into the trial court's dissolution decree, which is a valid court order. A finding of contempt must therefore be preceded by a finding that Mother violated the Marital Settlement Agreement. Father contends that Mother's violations of the Marital Settlement Agreement consist of her failure to offer him additional parenting time on those days Mother worked overtime or on Saturdays, and her refusal to provide vaccination records for the cat that scratched K.D. We address each contention in turn.

■ Section B, Paragraph 5 of the Marital Settlement Agreement addressed each party's responsibility for "finding alternate care, and pay for same, in the event of the child's illness that precludes daycare attendance during their parenting time or in the event that the parent needs additional daycare for that parent's own reasons." (Appellant's App. p. 48). In addition, Section B, Paragraph 5(d) of the Marital Settlement Agreement incorporated by reference Indiana Parenting Guidelines, § I(C)(3), which provides as follows:

Opportunity for Additional Parenting Time. When it becomes necessary that a

child be cared for by a person other than a parent or a family member, the parent needing the child care shall first offer the other parent the opportunity for additional parenting time. The other parent is under no obligation to provide the child care. If the other parent elects to provide this care, it shall be done at no cost.

This provision provides a right of first refusal in favor of the non-custodial parent in the event child care is necessary, but is subject to practicality concerns of distance, transportation, or time. Indiana Parenting Time Guidelines, § I(C)(3), Commentary; *Shelton v. Shelton*, 835 N.E.2d 513, 517, fn. 5 (Ind.Ct.App.2005), *aff'd*, 840 N.E.2d 835 (Ind.2006). The term "family member" includes persons "within the same household as the parent with physical custody." *Shelton*, 835 N.E.2d at 517.

■ Although the parties disagree which provision of the Marital Separation Agreement controls, we agree with the trial court that Mother's election to drop K.D. off at daycare on those occasional mornings when she went to work early did not constitute a breach of the Marital Settlement Agreement or the Indiana Parenting Time Guidelines. Here, Father's allegations center around two brief time periods, in April and August 2010, when Mother woke K.D. at 3 a.m. and took him to daycare at 3:45 a.m. The daycare provider testified that Mother had dropped K.D. off at 3:45 a.m. probably ten or fewer times since April 2010. The daycare provider also testified that since August 2010 Jeff had been dropping K.D. off at 6:15 a.m.—the same time Father drops K.D. off. In light of the foregoing, we cannot say that the trial court abused its discretion by declining to find Mother in contempt, as there was no breach of the Marital Settlement Agreement or the Indiana Parenting Time Guidelines. *See Leisure*

*v. Wheeler*, 828 N.E.2d 409, 416 (Ind.Ct. App.2005) (finding no denial of additional parenting time where custodial parent declined to offer non-custodial parent additional parenting time of less than three hours).

■ Turning to Father's second allegation of contempt, Father contends that the trial court abused its discretion by refusing to find Mother in contempt for withholding the cat's vaccination records. The Marital Settlement Agreement provided that the parents notify each other in the event of "any accident." (Appellant's App. p. 49). Here, it is undisputed that Mother notified Father that Jeff's cat had scratched K.D. The trial court observed the difficulty with this provision, noting that it "seems like fertile ground for you two to argue and fight frankly, [ ... ] because you do it well." (Transcript p. 196). The trial court also indicated that it would be inclined to modify the provision "if in fact this continues to be an issue about every accident [ ... ]." (Transcript p. 196).

■ Although Father contends that Mother's refusal to provide vaccination records until he filed his petition and Mother's use of profanity towards him constitute a showing of willful disobedience, we find that even if Mother's actions were a violation of the Marital Settlement Agreement, as noted above, isolated acts of misconduct do not necessarily give rise to a finding of willful disobedience. *Heagy*, 864 N.E.2d at 388. While Mother initially sought to provide the vaccination records to Father, the dispute arose when Jeff refused to provide Father with the cat's vaccination records, which he elected not do until after Father filed his petition alleging breach of the Marital Settlement Agreement and requested Mother to be held in contempt. Both Jeff and Mother testified that they believed the scratch to be minor and that Father's demand to see

the vaccination records was an overreaction. Mother testified that her use of profanity was in response to Father's numerous requests for the vaccinations. Based on the evidence before us, we cannot say that the trial court abused its discretion in finding that Mother did not violate the Marital Settlement Agreement or commit a contemptuous act regarding the vaccination records.

### II. *Additional Parenting Time*

 Finally, Father argues that the trial court abused its discretion by not ordering additional parenting time. A trial court's determination of a parenting time issue is afforded latitude and deference; we reverse only when the trial court abuses its discretion. *Gomez v. Gomez,* 887 N.E.2d 977, 983 (Ind.Ct.App.2008). If supported by a rational basis, the trial court's determination does not constitute an abuse of discretion. *Id.* Thus, "it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended by for the appellant before there is a basis for reversal." *Id.* (quoting *Duncan v. Duncan,* 843 N.E.2d 966, 969 (Ind.Ct.App. 2006), *trans. denied* ). We will not reweigh the evidence or judge the credibility of the witnesses. *Id.* In all parenting time issues, courts are required to give foremost consideration to the best interest of the child. *Id.*

We have held that while a custodial parent's egregious violations of a custody order or egregious acts toward another parent may support a modification of custodial arrangements, "isolated acts of misconduct" do not. *Hanson v. Spolnik,* 685 N.E.2d 71, 78 (Ind.Ct.App.1997), *trans. denied.* As the basis for Father's request for additional parenting time stems from the same set of facts regarding Mother's overtime and Saturday work discussed above, we find that at worst, Mother's actions are isolated, and in no event constitute an "egregious violation" of the Marital Settlement Agreement, nor an egregious act against Father. Accordingly, the trial court did not abuse its discretion by declining to order additional parenting time for Father.

### CONCLUSION

Based on the foregoing, we find the trial court did not abuse its discretion when it declined to find Mother in contempt for purported violations of the Marital Settlement Agreement. We also find that the trial court did not abuse its discretion by declining to order additional parenting time for Father.

Affirmed.

NAJAM, J. and MAY, J., concur.