## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this
Memorandum Decision shall not be regarded as
precedent or cited before any court except for the
purpose of establishing the defense of res judicata,
collateral estoppel, or the law of the case.



**FILED**

Feb 09 2015, 9:34 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT *PRO SE*

Michael L. Turner
Ossian, Indiana

### IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael L. Turner,<br>*Appellant,*<br><br>v.<br><br>Jennifer D. Pence,<br>*Appellee.* | February 9, 2015<br><br>Court of Appeals Case No.<br>90A05-1409-DR-447<br><br>Appeal from the Wells County<br>Circuit Court<br>The Honorable Kenton W. Kiracofe<br>Case No. 90C01-0509-CR-49 |

**Mathias, Judge.**

[1]     Michael L. Turner ("Father") appeals the order of the Wells Circuit Court
denying his motion to hold his ex-wife Jennifer D. Pence ("Mother") in
contempt for failing to abide by the trial court's earlier order regarding
parenting time.

[2]     We affirm.

# Facts and Procedural History

[3]     Father and Mother were married in March 2000 and had two children together: a daughter, M.T., born in July 2000; and a son, G.T., born in July 2004. The parties later divorced, and pursuant to a settlement agreement, the parents had joint legal custody of the children, but Mother was the primary physical custodian. Father had visitation with the children pursuant to the Indiana Parenting Time Guidelines ("IPTG"). The parties' relationship was acrimonious, and at some point, M.T. began to live with Father and his wife. On January 24, 2014, the trial court entered an order modifying custody so that Mother became the sole legal custodian and primary physical custodian of the children, with Father still maintaining visitation pursuant to the IPTG.

[4]     Accordingly, M.T. began to live with Mother and her husband. M.T. had trouble adjusting to the new custody arrangement, did not get along with either Mother or her step-father, and threatened to hurt herself. After M.T. made these threats, Mother took M.T. to a hospital where she received psychiatric care and counseling for several days, which included one weekend where M.T. would normally have been scheduled to be visiting with Father. M.T. was eventually released from the hospital, and Father requested that Mother allow him to have M.T. an extra weekend "make up" for the time she was in the hospital. Mother refused, and the two exchanged heated text messages on the subject.

Father also learned that after the children's school day ended, they took the school bus home and spent up to two hours by themselves before Mother returned home from work. Father believed that when he was available, he should be able to pick up the children from school and exercise additional parenting time with them until Mother came home from work. Mother also rejected this request, claiming that M.T. was old enough to stay home briefly and watch the children and that on other nights the children had other activities. The parties again exchanged heated text messages on this issue.

On April 4, 2014, Father filed a petition to hold Mother in contempt for failing to abide by the trial court's parenting time order. The trial court held a hearing on the matter on June 5, 2014, and entered an order that same day denying Father's petition. On July 7, 2014, Father filed a motion to reconsider in which he repeated his claims that the trial court should have held Mother in contempt and also requested that the trial court clarify its order and reduce its reasoning to writing. The trial court denied Father's motion on August 19, 2014. Father now appeals.

# Discussion and Decision

## A. Contempt

Father first argues that the trial court erred in denying his petition to hold Mother in contempt.[1] A determination of whether a party is in contempt of

---

[1]Mother has failed to file an Appellee's Brief, and we will not undertake the burden of developing an argument on her behalf. *See GEICO v. Graham*, 14 N.E.3d 854, 857 (Ind. Ct. App. 2014). Instead, we may

court is a matter left to the sound discretion of the trial court, and we reverse only where an abuse of that discretion has occurred. *Heagy v. Kean*, 864 N.E.2d 383, 386 (Ind. Ct. App. 2007). On appeal, we will not reweigh the evidence or assess the credibility of the witnesses, and we consider only the evidence in the light most favorable to the judgment. *Id*. To hold a party in contempt for violation of a court order, the trial court must find that the party acted with willful disobedience. *Id*. Where, as here, the trial court has declined to find a party in contempt, we will reverse only where there is no rational basis for the trial court's action. *Id*. (quoting *Clark v. Clark*, 404 N.E.2d 23, 27 (Ind. Ct. App. 1980)).

[8] Here, we are unable to say the trial court had no rational basis for the decision declining to hold Mother in contempt for failing to allow Father "make up" time for the weekend when M.T. was in the hospital. To the contrary, the trial court's decision had support in the record. Mother did not intentionally deprive Father of his weekend with M.T.; instead, the child was in the hospital after making suicidal threats. Both Father and Mother visited M.T. in the hospital as often as possible. Although many of Mother's text messages with Father were curt and rude, we cannot say that Mother's decision not to allow Father to have a "make up" weekend for the one he missed while M.T. was in the hospital required the trial court to hold her in contempt.

---

reverse the trial court's judgment if the appellant's brief presents a case of *prima facie* error. *Id*. This "*prima facie* error rule" protects the court on appeal and takes from us the burden of controverting arguments advanced for reversal, a duty which remains with the appellee. *Id*. Yet even under the *prima facie* error rule, we are obligated to correctly apply the law to the facts in the record in order to determine whether reversal is required, and if the appellant is unable to meet the burden of establishing *prima facie* error, we will affirm. *Id*.

[9] We reach a similar conclusion with regard to Father's request to exercise additional parenting time during the time period, up to two hours, from when the children were released from school until Mother came home after work. Father bases his argument on Parenting Time Guideline I(C)(3), which states:

> When it becomes necessary that a child be cared for by a person other than a parent or a responsible household family member, the parent needing the child care shall first offer the other parent the opportunity for additional parenting time, if providing the child care by the other parent is practical considering the time available and the distance between residences. The other parent is under no obligation to provide the child care. If the other parent elects to provide this care, it shall be done at no cost and without effecting child support. The parent exercising additional parenting time shall provide the necessary transportation unless the parties otherwise agree.

[10] Father claims that this after-school time falls within this provision and that he should be given the option of caring for the children from the time they get off school until Mother comes home after work; he also claims that Mother's refusal to allow him to do so made her in willful violation of the trial court's order. We disagree.

[11] The parties' contentions in this case clearly demonstrate why trial courts have considerable discretion in family court matters. The trial court has been involved with this case since the parents divorced in 2006, and noted the inability of the parents to effectively communicate or cooperate with regard to their children. The trial court also noted that Father lives approximately twenty minutes away from where the children now live and go to school. Thus, the court was concerned that the actual amount of time that Father would be able to spend with the children would be relatively short. Moreover, Mother did not

want Father at her home to either pick up or drop off the children when she was not there. Also, the children were not always at home by themselves for two hours. M.T. has counseling every other Monday, and both children are involved in other after-school activities.

[12] We commend Father for his willingness to do all that he can to spend even a small amount of time with his children, and it is disappointing that Father and Mother's relationship has deteriorated to this point. However, given the history of animosity between the parties, the trial court was well within its discretion to conclude that Mother's decision not to offer Father this opportunity for a small amount of additional parenting time was not willful disobedience of its parenting time order.

### B. Motion to Reconsider/Motion to Correct Error

[13] Father also claims that the trial court erred in denying his "motion to reconsider," which was filed after the trial court's denial of his petition to hold Mother in contempt. A motion requesting that the trial court revisit its decision after the entry of a final appealable order must be treated as a motion to correct error. *Waas v. Ill. Farmers Ins. Co.*, 722 N.E.2d 861, 863 (Ind. Ct. App. 2000) (citing *Hubbard v. Hubbard*, 690 N.E.2d 1219, 1221 (Ind. Ct. App. 1998)). A trial court has wide discretion to correct errors, and we will reverse only for an abuse of that discretion. *Williamson v. Williamson*, 825 N.E.2d 33, 44 (Ind. Ct. App. 2005). The trial court abuses its discretion only when its decision is against the logic and effect of the facts and circumstances before it and the inferences that may be drawn therefrom. *Id.*

[14] For the same reason that we conclude that the trial court did not abuse its discretion in denying Father's petition to hold Mother in contempt, we conclude that the trial court did not abuse its discretion in denying Father's motion to reconsider, which was, in essence, a motion to correct error.

### C. Failure to Reduce Decision to Writing

[15] Father also claims that the trial court erred in not reducing to writing its reasoning denying his petition to hold Mother in contempt. Father does not claim that the trial court was required to enter formal findings of fact and conclusions thereon but does claim that the trial court should have explained why it, in Father's opinion, deviated from the IPTG.

[16] In support of his argument, Father cites *Shelton v. Shelton*, 840 N.E.2d 835 (Ind. 2006), in which the court noted that Subsection 2 of the Scope of Application provision in the IPTG provided at that time that "[a]ny deviation from these Guidelines by either the parties or the court must be accompanied by a written explanation indicating why the deviation is necessary or appropriate in the case." *Id.* at 835. This provision has been moved to Subsection 3 and now states:

> There is a presumption that the Indiana Parenting Time Guidelines are applicable in all cases. Deviations from these Guidelines by either the parties or the court that result in parenting time less than the minimum time set forth below must be accompanied by a written explanation indicating why the deviation is necessary or appropriate in the case. A court is not required to give a written explanation as to why a parent is awarded more time with the child than the minimum in these guidelines.

Ind. Parenting Time Guidelines, Preamble § (C)(3).

Here, however, the issue before the trial court was not whether there had been any deviation from the minimums set forth in the IPTG. The issue was whether Mother *willfully* disobeyed the trial court's parenting time order that incorporated the IPTG. As noted above, the trial court was well within its discretion to conclude that she had not done so. Father could not raise what essentially amounts to a new issue—whether the trial court had to reduce its reasoning to writing—for the first time in his motion to correct error. *Troxel v. Troxel*, 737 N.E.2d 745, 752 (Ind. 2000).

# Conclusion

The trial court did not abuse its discretion in denying Father's petition to hold Mother in contempt for failing to abide by the trial court's parenting time order, nor did the trial court abuse its discretion in denying Father's motion to reconsider, which must be treated as a motion to correct error. Lastly, the trial court did not err in failing to reduce to writing its reasons for not finding Mother in contempt.

Affirmed.

Najam, J., and Bradford, J., concur.