## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 07 2018, 7:01 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Justin K. Clouser | Derick W. Steele |
| Noel Law | Kokomo, Indiana |
| Kokomo, Indiana | |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| M.B., <br> *Appellant-Respondent,* <br><br> v. <br><br> G.G., <br> *Appellee-Intervenor.* | March 7, 2018 <br><br> Court of Appeals Case No. 34A02-1708-DR-1828 <br><br> Appeal from the Howard Circuit Court <br><br> The Honorable Lynn Murray, Judge <br><br> Trial Court Cause No. 34C01-0812-DR-1261 |

**Bailey, Judge.**

# Case Summary

M.B. ("Father") appeals from a custody order concerning his two daughters, S.B. and L.B. (the "Children"), wherein the trial court granted physical custody to G.G., the Children's stepfather ("Stepfather"), who had cared for the Children before and after the death of their mother ("Mother").

We affirm in part and reverse in part.

# Issues

Father presents the following restated issues:

I. Whether there was sufficient evidence to overcome the presumption in favor of placing the Children with Father, a natural parent; and

II. Whether the trial court abused its discretion in finding a provision of the Indiana Parenting Time Guidelines wholly inapplicable.

# Facts and Procedural History

Father and Mother married in 2004, and S.B. was born in October 2007. Approximately one year later, Father and Mother separated, and Mother petitioned to dissolve the marriage in December 2008. Around that time, Father was incarcerated for seven months while he awaited trial on charges that were ultimately dismissed. After his release, Father moved to Montana, and he returned to Indiana in mid-2010. The dissolution action remained pending.

[5] Meanwhile, Mother began dating Stepfather in 2009. Mother and S.B. moved in with Stepfather in January 2010 and moved out in November 2010. At that point, Mother and S.B. lived in their own residence for six months. Father and Stepfather each visited the residence, and L.B. was conceived. Mother and S.B. then returned to Stepfather's residence; they began living with Stepfather in May 2011, and remained there when L.B. was born in November 2011.

[6] Both Mother and Father abused alcohol at times. Father accrued several convictions for driving while intoxicated in 2010, 2011, and 2012. As for Mother, approximately two weeks after L.B.'s birth in November 2011, Mother was found passed out in her vehicle. L.B. was with Father at the time. After this incident, Mother was incarcerated. While Mother was incarcerated and while she participated in a rehabilitation program, Mother's mother ("Maternal Grandmother") took care of the Children. Stepfather would visit the Children. The Children also spent one night with Father around Christmas of 2011.

[7] After Mother completed a rehabilitation program in early 2012, she reassumed care of the Children and moved in with Stepfather. Thereafter, Mother, Stepfather, and the Children lived together as a family. Mother relapsed at one point in 2012, and was sentenced to in-home detention on a conviction of driving while intoxicated. After the conviction, Mother maintained her sobriety. Mother also sought to finalize the dissolution. A final hearing was held in July 2012, at which time Father was incarcerated and did not appear. After the hearing, the marriage was dissolved and Mother was awarded custody of the Children. The court reserved other matters pertaining to the Children

while awaiting the results of DNA testing, which Father had requested. However, no DNA testing was completed in response to the dissolution decree.

[8] From early 2012 to mid-2015, Father had minimal contact with the Children: Mother brought the Children to see Father for a few hours in 2013, and Father also saw the Children in passing at the grocery store. Meanwhile, Mother and Stepfather married in December 2014. Several months later, Mother sought child support from Father, who responsively denied paternity. The court ordered DNA testing, which took place in mid-2015.

[9] Father's paternity was established on August 14, 2015. One week later, Mother unexpectedly died. Father then filed an emergency motion to establish custody; Stepfather moved to intervene and sought temporary guardianship of the Children. The trial court held a hearing in September 2015, after which it granted Stepfather's motion to intervene, and determined that Stepfather was the Children's de facto custodian. The trial court awarded Stepfather temporary legal and physical custody of the Children. The trial court further ordered that Father was entitled to parenting time, beginning with weekly supervised parenting time. Over time, Father and Stepfather agreed to increase Father's parenting time such that Father spent time with the Children on alternate Wednesdays and had overnight parenting time on alternate weekends.

[10] On May 30, 2017, the trial court held a final hearing concerning custody and associated matters, including parenting time and support. Following the hearing, the trial court awarded Stepfather custody of the Children, and ordered

parenting time for Father in accordance with the Indiana Parenting Time Guidelines. In so ordering, the trial court excluded one of the guidelines.

[11] Father now appeals.

# Discussion and Decision

[12] Where an action is "tried upon the facts without a jury," the trial court is obligated to enter special findings and conclusions upon a party's "written request . . . prior to the admission of evidence." Ind. Trial Rule 52(A). Here, prior to the admission of evidence, Stepfather made only an oral request; thus, although the court ultimately entered special findings and conclusions, it was not obligated to do so. In such instances, we regard the trial court's findings as sua sponte findings, *see Faver v. Bayh*, 689 N.E.2d 727, 730 (Ind. Ct. App. 1997), and apply a two-tiered standard of review to any issue covered by the findings, *Steele-Giri v. Steele*, 51 N.E.3d 119, 123 (Ind. 2016). That is, we look to "whether the evidence supports the findings, and whether the findings support the judgment." *Id.* "Any issue not covered by the findings is reviewed under the general judgment standard, meaning a reviewing court should affirm based on any legal theory supported by the evidence." *Id.* at 123-24.

[13] In conducting our review, we "consider only the evidence and reasonable inferences that are most favorable to the judgment," *In re V.A.*, 51 N.E.3d 1140, 1143 (Ind. 2016), giving "due regard . . . to the opportunity of the trial court to judge the credibility of the witnesses," T.R. 52(A). Moreover, we "shall not set

aside the findings or judgment unless clearly erroneous." *Id.* A trial court's findings are clearly erroneous when the record contains no facts to support them either directly or by inference; a judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Town of Fortville v. Certain Fortville Annexation Territory Landowners*, 51 N.E.3d 1195, 1198 (Ind. 2016). Ultimately, we will reverse only upon a showing of clear error: "that which leaves us with a definite and firm conviction that a mistake has been made." *Egly v. Blackford Cty. Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1235 (Ind. 1992).

## Custody Determination

[14] "Child custody determinations fall squarely within the discretion of the trial court and will not be disturbed except for an abuse of discretion," which occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it, or the reasonable inferences to be drawn therefrom. *In re B.H.*, 770 N.E.2d 283, 288 (Ind. 2002). The trial court "shall determine custody and enter a custody order in accordance with the best interests of the child." Ind. Code § 31-17-2-8; *see also* I.C. § 31-17-2-21 (requiring a "best interests" analysis in modifying child custody). In evaluating a child's best interests, the trial court must consider all relevant factors, including statutory factors—among them, "[e]vidence that the child has been cared for by a de facto custodian." *Id.* A de facto custodian is "a person who has been the primary caregiver for, and financial support [sic] of, a child who has resided with the person for at least . . . one (1) year if the child is at least three (3) years of age." I.C. § 31-9-2-35.5. If there is a de facto custodian, the trial court must

consider several additional factors, I.C. § 31-17-2-8, and the court "shall award custody of the child to the child's de facto custodian if the court determines that it is in the best interests of the child," I.C. § 31-17-2-8.5(d). However, there is an "important and strong presumption that the child's best interests are ordinarily served by placement in the custody of the natural parent." *B.H.*, 770 N.E.2d at 287.

> [B]efore placing a child in the custody of a person other than the natural parent, a trial court must be satisfied by clear and convincing evidence that the best interests of the child require such a placement. The trial court must be convinced that placement with a person other than the natural parent represents a substantial and significant advantage to the child.

*Id.* In making its determination, the trial court is not limited to specific criteria, although "evidence establishing the natural parent's unfitness or acquiescence, or demonstrating that a strong emotional bond has formed between the child and the third person, would of course be important." *Id.* Furthermore, the presumption in favor of the natural parent will not be overcome merely because a third party could provide better things in life for the child. *Id.* Moreover, a trial court's "generalized finding" is inadequate to support a determination that "placement other than with the natural parent is in a child's best interests." *Id.* Rather, the trial court must make "detailed and specific findings." *Id.* Whether the presumption is overcome ultimately "falls within the sound discretion of our trial courts, and their judgments must be afforded deferential review." *Id.*;

*see also Steele-Giri*, 51 N.E.3d at 124 (acknowledging the "well-established preference in Indiana" for giving deference to trial judges in family matters).

[15] Here, the trial court entered thorough findings concerning its decision to place the Children with Stepfather, including a finding that Stepfather "has forged and maintained a deep emotional bond[] with the [C]hildren as strong as any biological parent." Appellant's App. Vol. II at 36. The trial court further found that severing the custodial relationship "would cause serious emotional damage to the [C]hildren," observing that Stepfather has provided "stability and a continuity of nurturing care, especially essential for the [C]hildren, having to cope with the loss of their mother." *Id.* at 40. The court also acknowledged S.B.'s preference to remain with Stepfather and acknowledged the Guardian Ad Litem's opinion that the Children's long-term interests were best served by remaining with Stepfather: "[t]he stability provided by [Stepfather] over the last few years is the only they have known and neither girl, especially [S.B.], would be able to successfully cope with such a drastic change." Appellee's App. Vol. III at 30. Ultimately, the trial court found "by clear and convincing, as well as compelling, evidence" that it was in the Children's best interests to remain in Stepfather's custody. Appellant's App. Vol. II at 40.

[16] Father argues that the evidence is insufficient to overcome the presumption in favor of placing the Children with him. In so arguing, Father directs us to several commendable changes in his life, and chiefly likens this case to *In re B.W.*, 45 N.E.3d 860 (Ind. Ct. App. 2015). Yet, that case involved public policy concerns that are not present here. *See B.W.*, 45 N.E.3d at 867 (expressing

concern that where a struggling mother had consented to guardianship and then turned her life around, an eventual custody determination in favor of a third party would discourage struggling parents from seeking a "safety net"). Father also argues that awarding him custody would not have severed the relationship with Stepfather because Father was open to visitation. Moreover, Father asserts that the court improperly focused on his prior unfitness, and improperly reflected on Stepfather's financial stability and lack of criminal history.

[17] However, we are not free to reweigh the evidence, which indicates that for several years of the Children's young lives, Stepfather assumed a central parenting role at a time when Father denied his paternity. During that time, Stepfather developed a strong emotional bond with the Children, and the evidence indicates that neither child would be able to cope with a change in custody—especially as they still cope with Mother's death. We accordingly conclude that there is evidence sufficient to overcome the presumption in favor of Father, and that there is evidentiary support for the trial court's finding that it is in the Children's best interests to remain in Stepfather's custody. Thus, we discern no abuse of discretion in the trial court's custody determination.

## Parenting Time

[18] Father challenges the trial court's determination that a provision of the Indiana Parenting Time Guidelines is inapplicable. "A trial court's determination of a parenting time issue is afforded latitude and deference; we reverse only when the trial court abuses its discretion." *Dumont v. Dumont*, 961 N.E.2d 495, 501

(Ind. Ct. App. 2011), *trans. denied*. "No abuse of discretion occurs if there is a rational basis supporting the trial court's determination." *Gomez v. Gomez*, 887 N.E.2d 977, 983 (Ind. Ct. App. 2008). Therefore, "it is not enough that the evidence might support some other conclusion," rather, the evidence "must positively require" a different conclusion before there is a basis for reversal. *Duncan v. Duncan*, 843 N.E.2d 966, 969 (Ind. Ct. App. 2006), *trans. denied*. Furthermore, in reviewing the trial court's decision, "[w]e will not reweigh the evidence or judge the credibility of the witnesses." *Gomez*, 887 N.E.2d at 983.

[19] The Indiana Code provides that "[a] parent not granted custody of the child is entitled to reasonable parenting time rights." I.C. § 31-17-4-1(a). Moreover, there is a presumption that the Indiana Parenting Time Guidelines "are applicable in all cases" involving child custody. Ind. Parenting Time Guidelines pmbl. (C)(3). A trial court may deviate from those guidelines. *See id.* However, when a deviation results in less than the minimum parenting time set forth in the guidelines, the trial court must provide "a written explanation indicating why the deviation is necessary or appropriate in the case." *Id.*

[20] Here, the trial court ordered that Father generally should have guideline parenting time, but the court specified that a particular guideline did not apply. The excluded guideline sets forth the opportunity for additional parenting time:

> When it becomes necessary that a child be cared for by a person other than a parent or a responsible household family member, the parent needing the child care shall first offer the other parent the opportunity for additional parenting time, if providing the

> child care by the other parent is practical considering the time available and the distance between residences.

P.T. Guidelines § I(C)(3). The trial court explained that this guideline should not apply "due to the distance between residences" and the Children's close bond with Maternal Grandmother, "who principally has provided child care when needed." Appellant's App. Vol. II at 42.

[21] Father argues that the trial court erred in excluding this guideline, asserting (1) that the non-custodial parent should have the opportunity for additional parenting time "even when a non-household family member is available" and (2) that there was no evidence that "the distance between the residences is so substantial in nature as to make the option impractical." Appellant's Br. at 15.

[22] As to the distance between the residences, the evidence indicates that Father and Stepfather live some distance apart: Stepfather lives in Peru and Father lives in Kokomo. Yet, the guideline already accounts for the practicality of extending a parenting opportunity in light of the amount of "time available and the distance between residences." P.T. Guidelines § I(C)(3). Thus, distance alone does not provide a rational basis for altogether eliminating Father's right to additional parenting opportunities.

[23] As to the Children's relationship with Maternal Grandmother, the trial court's findings have evidentiary support. However, "[o]ur family law statutes and Guidelines do not provide grandparents with access rights superior to those of parents who desire to spend additional time with a child." *D.G. v. S.G.*, 82

N.E.3d 342, 350 (Ind. Ct. App. 2017), *trans. denied*. Moreover, even if the trial court fashioned the deviation to provide stability under the tragic circumstances of this case, the deviation is nonetheless overbroad. That is, because the order completely excludes the guideline, even if Maternal Grandmother is unable to care for the Children, Father has no right to additional parenting opportunities.[1] In this respect, the findings related to Maternal Grandmother do not support the decision to eliminate Father's opportunity for additional parenting time.

[24] We accordingly reverse that portion of the order providing for this deviation.

# Conclusion

[25] The trial court did not abuse its discretion in placing the Children with Stepfather, but the court abused its discretion in refusing to apply, in all circumstances, one of the Indiana Parenting Time Guidelines.

[26] Affirmed in part and reversed in part.

Kirsch, J., and Pyle, J., concur.

---

[1] To the extent the trial court sought to proactively preserve a relationship with Maternal Grandmother, we observe that Maternal Grandmother could someday seek visitation. *See* I.C. § 31-17-5-1 (providing that "[a] child's grandparent may seek visitation rights if . . . the child's parent is deceased.").